639 So.2d 25 (1994)
R.W., a child, Petitioner,
v.
A.C. SOUD, Jr., Judge, etc., et al., Respondents.
No. 83137.
Supreme Court of Florida.
June 30, 1994.
Louis O. Frost, Jr., Public Defender and Ward L. Metzger, Juvenile Court Coordinator, Office of Public Defender, Fourth Judicial Circuit, Jacksonville, for petitioner.
Robert A. Butterworth, Atty. Gen., James W. Rogers, Bureau Chief, Criminal Appeals and Wendy S. Morris, Asst. Atty. Gen., Tallahassee, for respondent.
HARDING, Justice.
R.W., a juvenile, petitions this Court for a writ of habeas corpus directing Circuit Court Judge A.C. Soud, Jr., and Superintendent James Woolsey to release R.W. from the Duval Regional Juvenile Detention Center. We have jurisdiction pursuant to article V, section 3(b)(9) of the Florida Constitution. We find that R.W. was detained in violation of chapter 39 of the Florida Statutes (1993).
The parties agree on the facts of this case. R.W. was arrested for petit theft involving the attempted shoplifting of $14 worth of cassette headphones and batteries. The State filed a petition for delinquency in circuit court, alleging the second degree misdemeanor offense of petit theft. Through his counsel, R.W. entered an admission to the petit theft on December 14, 1993, at which time the case was scheduled for disposition hearing on January 24, 1994. R.W. was given written notice that he must contact a Department of Health and Rehabilitative Services (HRS) counselor prior to that date.
At the time the court called the case on January 24, R.W. was outside the courtroom tucking in his shirttail. Before R.W. appeared in the courtroom, the judge indicated *26 that he had received a continuance request from HRS because R.W. had allegedly failed to contact his counselor as instructed. The judge also questioned whether a predisposition report (PDR) would be of any value regarding a sixty-day misdemeanor offense.
Upon R.W.'s actual appearance before the court, the judge again questioned whether a PDR was necessary and asked whether he had authority to put R.W. in secure detention so that the PDR could be completed. The judge noted that both R.W. and his parent had failed to contact the counselor. When R.W.'s counsel objected that chapter 39 specifically prohibits detention for the purpose of providing better access to juveniles, the judge stated:
That just can't be. If you got a juvenile  I understand, I've read that  when you've got a juvenile out there that needs to complete  he has pled guilty and he is up for sentencing, and he is required to contact, and he is not making any contact with the counselor, and refusing to do so, to state that I cannot do that  I don't know, I would be willing to test that. We can't dispose of the case.
After further argument by counsel, the judge refused to accept R.W.'s waiver of a PDR and also refused to pass the case to the next day so that R.W.'s parent could appear. Based upon his determination that the chapter 39 provisions relating to detention are inapplicable after a juvenile pleads guilty to an offense, the judge ordered R.W. into secure detention and scheduled the disposition hearing for February 7, 1994.
R.W. filed this petition for a writ of habeas corpus seeking release from secure detention. Although R.W. has already been released from detention and the petition is moot as to him, the issue presented is of sufficient importance and frequent recurrence to warrant our ruling on the legality of the procedure followed in this case. See Dugger v. Grant, 610 So.2d 428, 429 n. 1 (Fla. 1992).
Section 39.002(4), Florida Statutes (1993),[1] sets forth the legislative intent regarding detention of children. Although this provision states a need for secure placement for "certain children alleged to have committed a delinquent act," the second sentence makes no distinction between children awaiting adjudication and those whose disposition is pending. Section 39.01(16), Florida Statutes (1993), also defines detention care as "the temporary care of a child in secure, nonsecure, or home detention, pending a court adjudication or disposition or execution of a court order". (Emphasis added.)
Section 39.042, Florida Statutes (1993), addresses the use of detention. Subsection (1) provides that all determinations regarding the use of detention are to be primarily based upon a finding that the child: (a) presents a substantial risk of not appearing at a subsequent hearing; (b) presents a substantial risk of inflicting bodily harm on others as evidenced by recent behavior; (c) presents a history of committing a serious property offense prior to adjudication, disposition, or placement; or (d) requests protection from imminent bodily harm. This is consistent with the legislative intent expressed in section 39.002(4). Subsection (2) reaffirms the legislative intent, also expressed in section 39.002(4), that detention only be used if appropriate less restrictive placement alternatives are not available. Subsection (3) further provides that "[a]ll determinations and court orders regarding placement of a child into detention care shall comply with all requirements and criteria provided in this part and shall be based on a risk assessment of *27 the child." § 39.042(3), Fla. Stat. (1993) (emphasis added). Thus, absent the findings required by subsection (1) and the risk assessment required by subsection (3), detention of a juvenile is not permitted either before or after adjudication.
Section 39.043, Florida Statutes (1993), enumerates a number of prohibited uses of detention, including "[t]o permit more convenient administrative access to the child." § 39.043(1)(c). Although section 39.043(1) speaks in terms of a "child alleged to have committed a delinquent act or violation of law," this Court has specifically found that the enumerated prohibited uses of detention are prohibited whether the juvenile is preadjudicatory or has already been adjudicated delinquent. See A.A. v. Rolle, 604 So.2d 813 (Fla. 1992) (rejecting State's argument that section 39.043(1)(a) prohibition against use of detention to punish child did not prohibit secure detention of juvenile contemnor because Legislature only meant to prohibit preadjudicatory punishment of juveniles).
In the instant case, the trial court did not follow the statutory requirements of section 39.042. The court conducted no risk assessment of R.W. as required by section 39.042(3) and made no findings as provided in section 39.042(1). The court clearly ordered R.W.'s detention in order to make him available to an HRS counselor so that the PDR could be completed. Such a use of detention is specifically prohibited by section 39.043(1)(c).
Moreover, even if the court had originally conducted a risk assessment of R.W., the procedure followed here suffers from other procedural problems. Under section 39.044(9), Florida Statutes (1993), a child who is on release status and not previously detained may only be placed into detention "pursuant to a court hearing in which the original risk assessment instrument, rescored based on newly discovered evidence or changed circumstances with the results recommending detention, is introduced into evidence." The record contains no evidence that a risk assessment instrument was ever completed in the first place, much less evidence of any rescoring by the judge.
The State argues that Florida Rule of Juvenile Procedure 8.110(g) authorizes the procedure employed in this case. While we agree that the rule contemplates detention pending disposition,[2] the rule does not eliminate the statutory requirements that certain findings be made and that a risk assessment be performed before a juvenile can be placed in detention.
The State also cites H.L. v. Woolsey, 618 So.2d 268 (Fla. 1st DCA 1993), to support its contention that R.W. was properly detained. In H.L., the district court appears to have interpreted the time limits in section 39.044(5) as providing authority to detain a juvenile pending a disposition hearing, without regard to the statutory procedures outlined by section 39.042. To the extent that it can be read as authorizing predisposition detention of juveniles without following the statutory procedures outlined in section 39.042, we disapprove the opinion in H.L.
Accordingly, we find that R.W. was illegally detained because the procedures followed in this case violated the requirements and criteria in chapter 39. However, we need not grant R.W.'s petition for writ of habeas corpus as he is no longer being detained.
It is so ordered.
GRIMES, C.J., and SHAW and KOGAN, JJ., concur.
OVERTON, J., dissents with an opinion, in which McDONALD, Senior Justice, concurs.
OVERTON, Justice, dissenting.
I dissent. The majority has again imposed limitations and tied juvenile judges' hands, making it more difficult, if not impossible, for juvenile judges to properly control juvenile delinquents.
*28 In this instance, the juvenile has pleaded guilty but refused to comply with directions to meet with counselors and to provide the necessary information for a predisposition report. This meeting is important to obtain necessary information so that the judge may knowingly impose the appropriate punishment. It appears in this instance that the juvenile wanted nothing to do with a predisposition report and was willing to waive that report. The only proper means in this instance to assure the judge of having the necessary information from the juvenile was to temporarily place that juvenile in detention.
I do not find the legislative findings in chapter 39, Florida Statutes (1993), or the provisions of that chapter to prohibit the acts of the trial judge in this instance. As noted by the majority, section 39.042(1), Florida Statutes (1993), provides that all determinations regarding the use of detention are to be primarily based upon a finding that the child meets one of the specifically enumerated factors set forth in the statute. Moreover, the legislative intent contained in section 39.002(4), Florida Statutes (1993), provides that the decision to detain should be based in part on an assessment of those factors. Thus, I would find that the trial judge was not precluded from considering the circumstances in this case in choosing to detain the juvenile.
The majority, by its holding, has given juvenile delinquents who have pleaded guilty to or who have been found guilty of a criminal offense a means to avoid providing information for predisposition reports and, consequently, has made the judge's proper sentencing decision more difficult. We would not allow an adult to ignore a judge's directions in the manner that this convicted juvenile did. I would approve the actions of the juvenile judge under the circumstances of this case.
Clearly, in light of the majority's opinion, the legislature needs to address this issue.
McDONALD, Senior Justice, concurs.
NOTES
[1] Section 39.002(4), Florida Statutes (1993), provides:

DETENTION.  The Legislature finds that there is a need for a secure placement for certain children alleged to have committed a delinquent act. The Legislature finds that detention under the provisions of part II should be used only when less restrictive interim placement alternatives prior to adjudication and disposition are not appropriate. The Legislature further finds that decisions to detain should be based in part on a prudent assessment of risk and be limited to situations where there is clear and compelling evidence that a child presents a risk of failing to appear or presents a substantial risk of inflicting bodily harm on others as evidenced by recent behavior, presents a history of committing a serious property offense prior to adjudication, disposition, or placement, or requests protection from imminent bodily harm.
[2] Florida Rule of Juvenile Procedure 8.110(g), which deals with dispositional alternatives in juvenile adjudicatory hearings, provides in pertinent part:

If the [predisposition] report is not available, the court will continue the case for a disposition hearing and refer it to the appropriate agency or agencies for a study and recommendation. If the case is continued the court may order the child detained.