ANSTEAD, Justice,
dissenting.
I respectfully dissent, as I agree with those, including the Florida Bar’s Juvenile Court Rules Committee, who oppose the substitution of audiovisual monitors for personal appearances by children charged in juvenile court.[3] While the proposed change is obvi *198 ously suggested in good faith and based on genuine concerns, it represents a step in the wrong direction.
While the courts appear to play a small role in the legislature’s overall scheme for addressing children’s problems in Florida, the juvenile court’s role is critical because it sees our most troubled children. The juvenile court’s role is also unique because all of its members — judges, prosecutors, defenders, and support staff — have been charged by the legislature to focus on helping the children.[4] This explicit obligation to help contrasts sharply with the adversary system’s usual fixation on “winning.” When one of our children loses, we all lose. We can only “win” if we help.
Unfortunately, although not without notable exceptions in some circuits, the juvenile division is usually at the bottom of the peeking order in the allocation of judicial resources. Hopefully, this current debate will stir the circuits, and especially the chief judges thereof, to reexamine their priorities so as to be certain we are in step with the rest of society in recognizing that our troubled children should stand first in line. More attention and resources, not institutional convenience and super efficiency, should *199 be our response to those children who so desperately need our help.
KOGAN, J., concurs.

. The Rules Committee is, of course, a nonpartisan committee made up of judges, prosecutors, defense lawyers, and law teachers upon whom we have traditionally relied to assess important issues like the one before us today. That committee’s report speaks for itself:
COMMENTS AND RECOMMENDATIONS OF THE FLORIDA BAR JUVENILE COURT RULES COMMITTEE
COME NOW JOHN F. HARKNESS, Executive Director of the Florida Bar, and ELIZABETH L. HAPNER, Chair, Florida Bar Juvenile Court Rules Committee, having been granted leave to file comments and recommendations of the Florida Bar Juvenile Court Rules Committee in the captioned cause, by order dated September 12, 1994, and file this response in opposition to the proposed amendment:
Although a copy of the proposed emergency amendment was not provided to the Florida Bar Juvenile Court Rules Committee for consideration before comments were filed, the committee considered the proposed amendment at its September 8, 1994 meeting. The committee strongly opposes this requested procedural change. Due to the decision in R.R. v. Portesy, 629 So.2d 1059 (Fla. 1st DCA 1994), a similar rule relating to the same concept was considered, and rejected, by the delinquency subcommittee on June 23, 1994. Because of the lack of support within the subcommittee, that proposal was not considered by the committee as a whole.
The Florida Rules of Criminal Procedure permit the use of audiovisual devices for first appearances [Rule 3.130(a)] and arraignment [Rule 3.160(a)], The proposed emergency amendment would expand this use to juvenile detention hearings. The existence of probable cause is but one of the matters to be determined at a juvenile detention hearing. The court must further determine the need for detention according to the criteria provided by law. Florida Rule of Juvenile Procedure 8.010(f)(2) provides:
In making this determination in addition to the sworn testimony of available witnesses all relevant and material evidence helpful in determining the specific issue, including oral and written reports, may be relied on to the extent of its probative value, even though it would not be competent at an adjudicatoiy hearing.
Additionally, Chapter 39 of the Florida Statutes requires that the court make a finding that the statutory detention criteria has been met. F.S. 39.042, 39.043 and 39.044 (1993). An assessment of the risk must be done in order to determine the appropriateness of any form of detention. R.W. v. Soud, [639 So.2d 25, Fla. 1994]. The right to participate in the proceedings and the ability to challenge evidence presented with respect to the detention criteria were cited by the First District in its holding that detention hearings conducted by way of a video-telephone were illegal. The actual physical presence of the child and his parents or other responsible adults in the courtroom is necessary for the discussion and review of records entailed in consideration of the detention *198 criteria. No meaningful give and take can transpire when the child and his counsel are present only by means of a video screen.
Because detention hearings are evidentiary in nature, they are akin to the pretrial detention and bond hearings in the adult systems. Florida Rules of Criminal Procedure 3.131 and 3.132 govern those hearings. Neither makes provision for appearance by audio-visual equipment. Presumably, this is due to the right to confront the witnesses.
It is the considered opinion of the juvenile court rules committee that the use of video technology would dehumanize the process. The child and parents or responsible adult need to be physically present before the trial court. First offenders, or those who have never previously been subjected to detention proceedings, should be physically present to strengthen the impact of the hearing on the child. While we cannot sit by idly and ignore the advances in technology that aid in the judicial process, we must bear in mind that the funding and physical plant differs from county to county. Multiple county circuits have different courthouses yet only one regional detention center. This means that an assistant public defender may have to travel great distances to be present at the detention hearings, further straining their limited resources. The technology available differs substantially from one facility to the next based on the resources available in that area. For example, the screen size may not be adequate in some jurisdictions. There are no specific parameters set forth in the proposed rules concerning the type of equipment to be employed. Generally, if not always, the parents or other responsible adults who appear cannot be seen by the judge on the screen because the split screens do not make provision for such persons. In the future, the technology may further advance and improve at which time the committee will give the matter further consideration.
Because juvenile defendants are children, they are less mature and their ability to understand what takes place in the legal system is more limited than an adult’s. If the defendant is physically present in the courtroom, the judge is more likely to conduct a more thorough hearing. Similarly, the judge will be better able to determine whether the child defendant understands the proceedings. The court's perception is necessarily going to be more limited when viewing the child on a quarter of a television screen. The child’s perception and understanding is going to be far more limited. There is no guarantee under the proposed amendment that the child would even be able to see all the players on screen at one time.
The stated purpose of the proposed amendment is to eliminate the occasional disruption of proceedings by physical altercations or emotional outbursts and to streamline the proceedings by omitting the transport of the juvenile offenders to and from the detention center. In R.R. v. Portesy, supra, the First District observed
Indeed, if avoidance of the transfer of the accused juvenile to the hearing was the underlying reason for using this procedure, there was no showing that the detention hearing could not just as well have been held at the juvenile detention center.
The reasons cited in support of the proposed amendment to the rule are the exception, not the norm, and do not seem sufficiently significant to warrant such a change. Rather the proposed change appears to be purely for convenience.
No clear need for this procedure having been demonstrated, the committee urges this Court to deny the request for amendment of the rule.

. Of course, public safety is an ever present concern in juvenile delinquency proceedings. That concern, however, in no way lessens our obligation to help the children. That obligation is the major reason for having separate judicial proceedings for children.