WEBSTER, Judge.
Appellant, a juvenile, seeks review of an order directing that he be held in secure detention pending transfer to a moderate-risk residential facility following adjudication and disposition for what would have been four second-degree misdemeanors if committed by an adult. He contends that the trial court lacked authority to order him held in secure detention because neither his Risk Assessment Instrument (RAI) nor other appropriate statutory criteria supported such a placement. We agree and, accordingly, reverse.
As an initial matter, the state argues that the appeal is moot because appellant has been released from secure detention. We decline the state’s invitation to dismiss this appeal as moot because, in our opinion, the issue presented is of considerable importance and is likely to recur in the future. See Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984) (“mootness does not destroy an appellate court’s jurisdiction ... when the questions raised are of great public importance or are likely to recur”).
The relevant facts are not in dispute. Having entered pleas of no contest to four charges which, if committed by an adult, would all be second-degree misdemeanors, appellant was adjudicated a delinquent child, and ordered to be placed by the Department of Juvenile Justice in a moderate-risk residential facility. The RAI prepared for appellant reflected a score of only two points, and reflected no other statutory basis for secure detention. Notwithstanding this fact, representatives of the Department of Juvenile Justice “request[ed] the Court [to] waive the RAI,” and to order appellant, who had previously been placed in secure detention, held in secure detention for an additional fifteen working days, pending transfer to a moderate-risk residential facility. Their explanation for this request was that appellant “ha[d] not been living at home,” and there was not “an electronic monitor available.”
Counsel for appellant objected, arguing that “[t]he case law says the court can’t waive the RAI.” Nevertheless, the trial court granted the request, making the following comments:
Well, we’re going to give the legislature something to think about and chew on and so forth, some of these edicts and so forth. They might just feel that’s an inherent power of the court to do that and think it’s wonderful legislation. I think what the state and [the Department of Juvenile Justice representative] said makes a lot of sense. I wish I could do it even longer. [Appellant], you will be in secure[ ] detention for fifteen working days and the Court will waive the RAI assessment that has been found to have some significance by some other courts and [you] will be in secure detention for fifteen working days for the reasons that were outlined by [the Department of Juvenile Justice representative], and then home detention with a monitor after the fifteen working days.
*1309 In its written order, the trial court explained its decision as follows: “RAI points are waived due to not being persuasive in determining detention status, and juvenile has no home to go to at this time.”
Section 39.042(2)(a), Florida Statutes (1995), mandates that, except in cases involving a charge of domestic violence, “[a]ll determinations and court orders regarding placement of a child into detention care shall comply with all requirements and criteria provided in this part and shall be based on a risk assessment of the child.” (Emphasis added.) See R.W. v. Soud, 639 So.2d 25 (Fla.1994) (holding that 1993 version of statute which, for purposes of this appeal, is identical, meant what it appeared to say). Section 39.042(2)(b)l specifies considerations which must be included in the RAI, and requires that the RAI “indicate whether detention care is warranted, and, if detention care is warranted, whether the child should be placed into secure, nonsecure, or home detention care.” Section 39.044(1) places with the Department of Juvenile Justice intake counselor or ease manager responsibility for deciding whether a child taken into custody by a law enforcement agency for the commission of a delinquent act should be detained pending a detention hearing. According to section 39.044(l)(b), “[t]he intake counselor or case manager shall base the decision whether or not to place the child into secure detention care, home detention care, or nonsecure detention care on an assessment of risk in accordance with the risk assessment instrument and procedures developed by the Department of Juvenile Justice.”
The circumstances which will permit a court to continue detention for a child initially detained by the Department of Juvenile Justice are set out in section 39.044(2):
[A] child taken into custody and placed into nonsecure or home detention care or detained in secure detention care prior to a detention hearing may continue to be detained by the court if:
(a)The child is alleged to be an escapee or an absconder from a commitment program, a community control program, furlough, or aftercare supervision, or is alleged to have escaped while being lawfully transported to or from such program or supervision;
(b) The child is wanted in another jurisdiction for an offense which, if committed by an adult, would be a felony;
(c) The child is charged with a delinquent act or violation of law and requests in writing through legal counsel to be detained for protection from an imminent physical threat to his or her personal safety;
(d) The child is charged with committing an offense of domestic violence as defined in s. 741.28(1) and is detained as provided in s. 39.042(2)(b)3.;
(e) The child is charged with a capital felony, a life felony, a felony of the first degree, a felony of the second degree that does not involve a violation of chapter 893, or a felony of the third degree that is also a crime of violence, including any such offense involving the use or possession of a firearm; or
(f) The child is charged with any second degree or third degree felony involving a violation of chapter 893 or any third degree felony that is not also a crime of violence, and the child:
1. Has a record of failure to appear at court hearings after being properly notified in accordance with the Rules of Juvenile Procedure;
2. Has a record of law violations prior to court hearings;
3. Has already been detained or has been released and is awaiting final disposition of the case;
4. Has a record of violent conduct resulting in physical injury to others; or
5. Is found to have been in possession of a firearm.
.... Unless a child is detained under paragraph (d), the court shall utilize the results of the risk assessment performed by the intake counselor or case manager and, based on the criteria in this subsection, shall determine the need for continued detention.... If the court orders a placement more restrictive than indicated by the results of the risk assessment in *1310 strument, the court shall state, in writing, clear and convincing reasons for such placement.
(Emphasis added.) Read in conjunction with the remainder of section 39.044(2), we believe that the emphasized language was relatively clearly intended to mean merely that, should the court conclude, “based on the criteria in th[e] subsection,” that “a placement more restrictive than indicated by the results of the risk assessment instrument” is called for, it may order such a placement, provided that it specifies, in writing, the criterion or criteria upon which it relies for its conclusion. We find additional support for such a reading in the directive found in section 39.042(2)(b) 1 that the RAI “be designed to target a narrower population of children than s. 39.044(2),” and in the supreme court’s decision in R.W. v. Soud.
The state argues that the trial court’s action was permissible pursuant to section 39.044(10)(a) which, in relevant part, provides:
If the child is committed to a low-risk residential program or a moderate-risk residential program, the [Department [of Juvenile Justice] may seek an order from the court authorizing continued detention for a specific period of time necessary for the appropriate residential placement of the child. However, such continued detention in secure detention care may not exceed 15 days after commitment, excluding Saturdays, Sundays, and legal holidays ....
This section clearly authorizes “continued detention.” Therefore, we believe that it must be read in conjunction with section 39.044(2), which specifies the conditions pursuant to which detention may initially be ordered. By necessary implication, detention may be “continued” only if it was permissible initially. On the record before us, it is undisputed that appellant’s RAI did not support placement in secure detention, and that none of the statutory criteria found in section 39.044(2), which would permit a court to order placement more restrictive than that indicated by the RAI, existed. Moreover, the only substantive justification offered by the trial court — that appellant “ha[d] no home to go to” — is an expressly prohibited one. § 39.043(l)(d), Fla.Stat. (1995) (detention may not be ordered because of “a lack of more appropriate facilities”). Because initial detention would not have been supported by either the RAI or any permissible statutory criterion, we fail to see what the permissible basis for “continued detention” might be.
Finding no legal basis for the order directing that appellant be held in secure detention pending transfer to a moderate-risk residential facility, that order is reversed. See generally C.M.T. v. Soud, 662 So.2d 1382 (Fla. 1st DCA 1995) (granting writ of habeas corpus when juvenile was shown to have been ordered held in secure detention, contrary to RAI score, pending placement in moderate-risk residential program). We do not order appellant’s immediate release only because it appears that he is no longer so detained.
REVERSED.
ALLEN and MICKLE, JJ., concur.