682 So.2d 210 (1996)
In the Interest of D.G.H., a Child, Petitioner,
v.
John GNAT, Superintendent of the Duval Regional Juvenile Detention Center, Respondent.
No. 96-2884.
District Court of Appeal of Florida, First District.
October 30, 1996.
Louis O. Frost, Jr., Public Defender, Lisa Steely, Juvenile Court Coordinator, Office of the Public Defender, Jacksonville, for Petitioner.
Robert A. Butterworth, Attorney General, Jean-Jacques A. Darius, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Respondent.
ERVIN, Judge.
As in S.W. v. Woolsey, 673 So.2d 152 (Fla. 1st DCA 1996), petitioner, a child accused of committing a delinquent act, seeks review by habeas corpus of a detention order *211 placing him in secure detention until further order of court. We granted the petition by unpublished order and directed the trial court to release the petitioner from secure detention,[1] and we now write to explain our reasons for so doing.
The petitioner was arrested for what would be, if committed by an adult, the third-degree felony of battery on a school board employee and the second-degree misdemeanor of willful disturbance of a school, and placed in custody. The day following his arrest, the child, who had no prior history of juvenile or criminal offenses, was released to nonsecure home detention status pursuant to a nine-point score on the risk assessment instrument (RAI) based on the battery charge. No points were assigned for the remaining accusation, disturbance of a school, because, although one additional point may be assessed for a misdemeanor, the form apparently requires the inclusion of an additional point only if the misdemeanor charge involves an event that is separate and unrelated to the most serious current offense for which points are scored.
At the detention hearing conducted the day following the child's release from departmental custody, the state requested the court to aggravate the RAI score by an additional three points, which would make the child eligible for placement in a secure facility.[2] The court granted the request based on the reasons the state submitted, which included the child's commission of a battery on an instructional employee, the occurrence of the incident on school grounds in the presence of other students, and the disruption of school functions. As a consequence, the child was ordered to be confined in secure detention.
In its response to the petition for writ of habeas corpus, the state, analogizing the lower court's right to aggravate a risk assessment score to the court's right to aggravate a guideline sentence, appears to concede that the first reason given, that the child was charged with the commission of a battery on a school teacher, is not a valid reason to aggravate the score. Such a reason is an inherent element of the offense, which was already enhanced from simple battery to felony battery, and additional points were assessed due to the victim's status as an instructional employee. The state contends that the remaining reasons, that the battery occurred in the presence of other students on school grounds and the resultant disruption of school functions, were not inherent elements of the charged, scored offense. While they may constitute components of the misdemeanor charge, the state nevertheless contends those reasons were valid because the misdemeanor offense was not scored on the RAI. The assistant public defender argues that the lower court's authority to revise the risk assessment points is primarily limited to the correction of mere clerical errors.
After reviewing the pertinent provisions of sections 39.042 and 39.044, Florida Statutes (1995), we are not able to agree with either position. Although it clearly appears that the trial court retains discretion to order placement more severe than that indicated in an RAI, the court's discretion in such regard is now sharply curtailed by the legislature's expressed preference for less restrictive alternatives to secure detention before adjudication and disposition. Our conclusion is supported by our examination of the preamble to the Juvenile Justice Act of 1990, which explains in the following terms certain of the goals sought to be accomplished by its enactment:
WHEREAS, diversion and early intervention efforts must be adequately funded to ensure success in reducing the entry of *212 children into the delinquency system, and small, effective, community-based programs need to be provided for troubled, addicted, and disturbed children, and
WHEREAS, public safety is compromised by the inappropriate placement of children into secure detention, because those children are then exposed to negative role models, are given the opportunity to learn new crime techniques, and may become victims of intimidation and violence....
Ch. 90-208, at 1085, Laws of Fla.
Section 39.002(4), Florida Statutes (Supp. 1990), included within chapter 90-208, further amplifies the legislative purpose in seeking alternatives to secure detention, by stating:
The Legislature finds that there is a need for a secure placement for certain children alleged to have committed a delinquent act. The Legislature finds that detention under the provisions of part II [encompassing the scoring criteria of RAIs] should be used only when less restrictive interim placement alternatives prior to adjudication and disposition are not appropriate. The Legislature further finds that decisions to detain should be based in part on a prudent assessment of risk and be limited to situations where there is clear and compelling evidence that a child presents a risk of failing to appear or presents a substantial risk of inflicting bodily harm on others as evidenced by recent behavior, presents a history of committing a serious property offense prior to adjudication, disposition, or placement, or requests protection from imminent bodily harm.[3]
(Emphasis added) (footnote added).
In order to implement the legislative aim that "less restrictive interim placement alternatives" be ordered in lieu of detention, the 1990 legislature also enacted section 39.038(2)(a), Florida Statutes (1990), providing that a child taken into custody shall be released therefrom as soon as reasonably possible to the child's parent, guardian, legal custodian, or any other responsible adult. Section 39.042(1), Florida Statutes (1995), reiterates the legislative goals stated in section 39.002 and the preamble to chapter 90-208, by providing that all determinations regarding the use of secure, nonsecure or home detention shall be based primarily upon findings that the child:
(a) Presents a substantial risk of not appearing at a subsequent hearing;
(b) Presents a substantial risk of inflicting bodily harm on others as evidenced by recent behavior;
(c) Presents a history of committing a property offense prior to adjudication, disposition, or placement;
(d) Has committed contempt of court by:
1. Intentionally disrupting the administration of the court;
2. Intentionally disobeying a court order; or
3. Engaging in a punishable act or speech in the court's presence which shows disrespect for the authority and dignity of the court; or
(e) Requests protection from imminent bodily harm.
To ensure that juvenile detentions be based on "a prudent assessment of risk," the 1990 legislature also provided that the Department of Juvenile Justice, in conjunction with representatives of the circuit court judges conference and the prosecuting attorneys and public defenders associations, develop an RAI which takes the above factors into consideration, as well as appropriate aggravating and mitigating circumstances.[4] § 39.042(3)(b)(1), Fla.Stat. (Supp.1990). The trial court is authorized to depart from the placement indicated by the risk assessment score only if the court finds during the detention hearing "a material error in the scoring *213 of the risk assessment instrument." § 39.042(2)(b)(2), Fla.Stat. (1995). Unfortunately, the statute is silent regarding what constitutes a "material error." Nevertheless, we cannot regard it to have been the legislative intent to allow preadjudication and predisposition detentions without the preparation of an RAI, or to allow placement more restrictive than that indicated in the RAI, based on findings inconsistent with those delineated in section 39.042(1). See R.W. v. Soud, 639 So.2d 25, 26-27 (Fla.1994).
It appears from our review that the 1990 act was the culmination of a lengthy process which was intended to divert children from the confines of secure detention pending adjudication or detention. The act had formerly placed virtually unlimited authority in the judiciary to detain children, e.g., by allowing detentions to be used "[t]o protect the person or property of others or of the child." § 39.032(2)(a), Fla.Stat. (1979). For the past 15 years, however, the legislature has made substantial inroads into the courts' power to detain. For example, the 1981 legislature allowed a child who committed any felony or misdemeanor to be detained if he or she had a history of prior delinquent acts. § 39.032(2), Fla.Stat. (1981). And the 1988 legislature first specifically recognized the problems inherent in the overuse of secure detention, by its enactment of section 39.0321, Florida Statutes (Supp.1988), listing a number of circumstances which prohibited a child's placement in such detention.
After the passage of the 1990 act, the appellate courts have repeatedly held that a trial court's authority to order a child held in detention during the pendency of the case is limited to the statutory factors prescribed under sections 39.042 and 39.044. For example, in M.L.F. v. State, 678 So.2d 1307 (Fla. 1st DCA 1996), following the child's delinquency adjudication, the court ordered the child to be placed in a moderate-risk residential facility, but directed him to be held in secure detention for 15 working days before his transfer to such facility, notwithstanding that his risk assessment score was only two points, and no other statutory basis was given for the necessity of secure detention. In its written order, the trial court gave the following reason[5] for not adhering to the release status indicated by the RAI: "`RAI points are waived due to not being persuasive in determining detention status, and juvenile has no home to go to at this time.'" Id. at 1309. In reversing, this court construed that portion of section 39.044(2), which permits a court to order placement more restrictive than that indicated by the RAI, as meaning that such decision must be based only on the factors delineated under section 39.044(2).
Applying the reasoning of M.L.F. and R.W. v. Soud to the case at bar compels reversal of the detention order. The court below not only failed to provide written reasons justifying its departure from the RAI score, as required by section 39.044(2), the oral reasons it gave can hardly be considered as complying with the clear and convincing statutory test. The only reason the court gave during the hearing that could conceivably fall within the parameters of any of the section 39.042 or 39.044 criteria was that the child was charged with what would be a third-degree felony if committed by an adult, which is also a crime of violence. See § 39.044(2)(e), Fla.Stat. (1995). The state conceded, however, that this reason was inapplicable because battery is ordinarily a first-degree misdemeanor and is enhanced to a third-degree felony once it is committed against a school employee; therefore, such reason was already accounted for in the offense charged and the points scored on the RAI. The remaining reasons, i.e., that the battery was committed in the presence of other students on school grounds and the resultant disruption of school functions, are not among any of the reasons listed under sections 39.042(1) or 39.044(2). As in S.W. v. Woolsey, all the points assigned the child were attributable to the delinquent act for which he had been charged, and no other reasons compatible with the statutory criteria were given that would justify a departure.
*214 Consequently, the court had no statutory discretion to order a placement more restrictive than that indicated by the points scored in the RAI.
REVERSED.
DAVIS, J., concurs.
BOOTH, J., specially concurs with written opinion.
BOOTH, Judge, specially concurring.
I must concur in the reversal of secure detention since all parties concede that the first reason stated for aggravating the risk assessment score (that victim was a school board employee) is an inherent component of the felony offense, and may not be used in aggravation. Striking this factor drops the risk assessment score back into the 7 to 11 point range, thereby indicating placement in nonsecure or home detention care. Petitioner has conceded that since he is charged with a violent third-degree felony, he qualifies for detention under section 39.044(2)(e), Florida Statutes.
The majority's analysis as to the remaining aggravating reasons is unnecessary to the decision.
NOTES
[1] Apparently, the lower court had already ordered the child released from secure detention before receipt of our order issuing the writ. Notwithstanding this action, we do not consider the appeal to be moot, as the issue presented is of sufficient importance and of frequent recurrence to require a ruling on the legality of the procedure followed in this case. See R.W. v. Soud, 639 So.2d 25 (Fla.1994); M.L.F. v. State, 678 So.2d 1307 (Fla. 1st DCA 1996).
[2] The guidelines provided in the RAI reflect that a child who scores less than seven points is eligible for release status, one who scores 7 to 11 points shall be placed in nonsecure or home detention, and one who receives 12 or more points, secure detention.
[3] These provisions are now found in section 39.002(4)(a), Florida Statutes (1995). The legislature had previously enacted portions of the above quoted language and incorporated them within section 39.032(3), Florida Statutes (Supp. 1988).
[4] As this court observed in S.W., 673 So.2d at 154, the legislature has provided no guidance regarding what circumstances qualify as aggravating or mitigating.
[5] A trial court has the discretion, pursuant to section 39.044(2), Florida Statutes (1995), to impose a more severe detention placement than that reflected in an RAI if it states "in writing, clear and convincing reasons for such placement."