718 So.2d 220 (1998)
S.C., a child, Petitioner,
v.
Robert PETERSON, Superintendent of the St. Lucie Regional Detention Center, Respondent.
No. 98-2502.
District Court of Appeal of Florida, Fourth District.
July 31, 1998.
Rehearing and Clarification Denied August 28, 1998.
*221 Diamond R. Litty, Public Defender, and Thomas P. Turcotte, Assistant Public Defender, Fort Pierce, for petitioner.
Robert A. Butterworth, Attorney General, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for respondent.
GROSS, Judge.
By a petition for habeas corpus, petitioner seeks a writ "releasing her from commitment status" and terminating the circuit court's jurisdiction over her.
On January 26, 1998, the trial court signed an "Order of DispositionCommitment to the Department of Juvenile Justice," arising from petitioner's plea of no contest to petit theft, a second degree misdemeanor. The order sentenced petitioner to "be committed to DJJ at a restrictiveness level of 6, moderate risk" program. While awaiting placement in a level 6 program, petitioner was placed on home detention. After more than 60 days of home detention, petitioner moved the trial court to release her from "commitment status, home detention and all further jurisdiction and supervision resulting from" the case. The trial court denied her motion.
Petitioner draws her argument from section 985.231(1)(d), Florida Statutes (1997), which provides in pertinent part:
Any commitment of a delinquent child to the Department of Juvenile Justice must be for an indeterminate period of time, which may include periods of temporary release, but the time may not exceed the maximum term of imprisonment that an adult may serve for the same offense.
The maximum term of incarceration which an adult could serve for second degree petit theft is 60 days. See §§ 812.014(2)(d), 775.082(4)(b), Fla. Stat. (1997). Petitioner reasons that home detention is the equivalent of a "commitment" under section 985.231(1)(d), so that she is entitled to be released from the supervision and control of the department in this case.
Chapter 985 does not explicitly define the term "commitment." However, as used in the statute, a "commitment" is the judicial act of placing a juvenile into a custodial program. Section 985.231, Florida Statutes (1997), sets forth a court's "powers of disposition" in cases where a child has been adjudicated delinquent. The court sentenced petitioner pursuant to section 985.231(1)(a)3, which provides that a court may "[c]ommit the child to the Department of Juvenile Justice at a restrictiveness level defined in s. 938.03(45)."[1] Section 938.03(45) sets forth the five restrictiveness levels "of custody provided by programs that service the custody and care needs of committed children." Under section 985.231(1)(a)3, there is no open commitment to the department, but only a commitment for placement in a custody program. It follows that a "commitment" within the meaning of section 985.231(1)(d) cannot commence until a juvenile actually enters a custody program.
Chapter 985 classifies "home detention" not as a type of "commitment," but as a kind of detention care preliminary to commitment to a custodial program. Section 985.03(18)(c) provides in pertinent part:
(18) "Detention care" means the temporary care of a child in secure, nonsecure, or home detention, pending a court adjudication or disposition or execution of a court *222 order. There are three types of detention as follows:
....
(c) "Home detention" means temporary custody of the child while the child is released to the custody of the parent, guardian, or custodian in a physically nonrestrictive environment under the supervision of the Department of Juvenile Justice staff pending adjudication, disposition, or placement.
The statute contemplates that "home detention" may be used "pending ... execution of a court order" and specifies that it is a type of temporary custody that may be used "pending ... placement." "Placement" refers to one of the programs authorized in section 985.231. With this explicit statutory definition, "home detention" cannot be a "commitment" referred to in section 985.231(1)(d).
Our interpretation of the use of the term "commitment" in Chapter 985 is similar to that reached by the first district in construing a similar statute. In T.M. v. State, 701 So.2d 1221 (Fla. 1st DCA 1997), the issue was whether a juvenile had been "committed to a residential commitment program" within the meaning of section 790.22(9), Florida Statutes (1997), where there has been no such commitment, a court is required to impose a sentence of five days in secure detention and 100 hours of community service, provided that the minor is found to have committed an offense involving the use or possession of a firearm or to have possessed a firearm during the commission of an offense. The juvenile in T.M. was placed in an intensive community supervision program, "with the proviso that should he violate that supervision, he would be placed in a level VI residential program." Id., 701 So.2d 1221. The first district affirmed the trial court's determination that the community supervision program was not a commitment to a residential commitment program. The court reasoned that the meaning of the term "commit" was "to place officially in confinement or custody," and that the juvenile had "yet to be committed, and [might] never be committed to a residential program." Id. at 1222.
We do not reach any issue not raised in the trial court. The petition for habeas corpus is denied.
FARMER and SHAHOOD, JJ., concur.
NOTES
[1] Section 985.231 employs the term "commit" in two other subsections. Section 985.231(1)(a)2 states that the court may "[c]ommit the child to a licensed child-caring agency willing to receive the child ..." Section 985.231(1)(a)8 provides that the court may "[c]ommit the child to the Department of Juvenile Justice for placement in a program or facility for serious or habitual juvenile offenders ..." Both of these uses of the term are consistent with the idea that a commitment is to a custodial program.