PER CURIAM.
A juvenile petitions this court for a writ of habeas corpus arguing that the court exceeded its authority in placing the juvenile on home detention with electronic monitoring and imposing an 8 p.m. curfew pending placement in a moderate risk residential program. The juvenile argues that home detention cannot exceed five days unless the Department of Juvenile Justice [DJJ] requests an additional ten days, which did not occur. We previously issued an order denying the petition. We now explain our decision.
The court adjudicated the juvenile delinquent for first-degree petit theft and revoked probation in three separate cases where the child was charged with battery, second-degree petit theft, and grand theft. In the accompanying detention order, the trial court placed the juvenile on home detention -with electronic monitoring and imposed an 8 p.m. curfew until placement.
Section 985.27(l)(b), Florida Statutes (2011),[1] provides:
(b) A child who is awaiting placement in a moderate-risk residential program must be removed from detention within 5 days, excluding Saturdays, Sundays, and legal holidays. Any child held in secure detention during the 5 days must meet detention admission criteria under this part. The department may seek an order from the court authorizing continued detention for a specific period of time necessary for the appropriate residential placement of the child. However, such continued detention in secure detention care may not exceed 15 days after entry of the commitment order, excluding Saturdays, Sundays, and legal holidays, and except as otherwise provided in this section. A child who is placed in home detention care, nonse-eure detention care, or home or nonse-cure detention care with electronic monitoring, while awaiting placement in a moderate-risk program, may be held in secure detention care for 5 days, if the child violates the conditions of the home detention care, the nonsecure detention care, or the electronic monitoring agreement. For any subsequent violation, the court may impose an additional 5 days in secure detention care.
§ 985.27(l)(b), Fla. Stat. (2011).
The juvenile argues that there is no statutory authority for unlimited home de *790 tention and that the phrase “must be removed from detention within 5 days” in the first sentence limits all forms of detention to five days. We disagree.
We look first to the language of the statute and its plain meaning. Fla. Dep’t of Children & Family Servs. v. P.E., 14 So.3d 228, 234 (Fla.2009). In plain terms, the word “detention” means “a holding in custody.” Webster’s Third New International Dictionary 616 (1996). In the ordinary sense, “detention” is typically understood as a physical “holding in custody” of a person or object. In law, of course, the “holding in custody” may be constructive, that is, legal “custody,” a restraint upon the liberty of the person. “Detention care” is defined to include all forms of detention under Chapter 985: secure, nonsecure, and home detention. § 985.03(18), Fla. Stat. (2011). The first sentence of the subdivision at issue uses the term “detention,” not “detention care.”
The question is whether the legislature limited all forms of “detention” for juveniles awaiting placement in moderate risk programs to five days unless extended on motion by DJJ. We think not for three reasons.
First, section 985.27(1) provides: “The court must place all children who are adjudicated and awaiting placement in a commitment program in detention care. Children who are in home detention care or nonsecure detention care may be placed on electronic monitoring.” (emphasis supplied). This means that a child awaiting placement cannot be released outright. Home detention is the least restrictive form of detention care available to the court. “Home detention” is “physically nonrestrictive.” § 985.03(18)(c), Fla. Stat. (2011) (defining “home detention” as “temporary custody of the child while the child is released to the custody of a parent, guardian, or custodian in a physically nonrestrictive environment under supervision of the Department”).
Second, the subdivision provides:
The department may seek an order from the court authorizing continued detention for a specific period of time necessary for the appropriate residential placement of the child. However, such continued detention in secure detention care may not exceed 15 days after entry of the commitment order, excluding Saturdays, Sundays, and legal holidays, and except as otherwise provided in this section.
§ 985.27(l)(b), Fla. Stat. (2011) (emphasis added).
The word “such” means “of the sort or degree previously indicated or implied.” Webster’s Third New International Dictionary 2283 (1996). Black’s Law Dictionary (8th Edition) defines “such” as: “1. Of this or that kind.... 2. That or those; having just been mentioned.” Thus, the “detention” and “continued detention” that are discussed, and which are limited to a maximum of 15 days, is “secure detention,” not home detention. The “detention” that may be “continued,” and which is limited to five days by the first sentence, is secure detention. The time limitations in this subdivision apply only to “secure detention” of juveniles awaiting placement in moderate risk programs.
Third, the subdivision provides for a five-day secure detention sanction for each “violation” and “subsequent violation” of home detention, nonsecure detention, or electronic monitoring. These sanctions would be rendered virtually meaningless if the child must ordinarily be removed from home or nonsecure detention within five days.
Several reported decisions support our reading of the statute. S.C. v. Peterson, 718 So.2d 220 (Fla. 4th DCA 1998) (deny *791 ing habeas corpus where the juvenile had been on home detention pending placement for more than 60 days); K.P. v. State, 952 So.2d 1229, 1230 (Fla. 5th DCA 2007) (finding that a petition for habeas corpus, which had challenged a 15-day term of secure detention pending placement, was moot because the juvenile was released to unlimited home detention); Q.A. v. Dep’t of Juv. Justice, 858 So.2d 1230, 1231 (Fla. 1st DCA 2003) (accepting DJJ’s concession that the juvenile had to be released from secure detention to home detention with electronic monitoring). These cases recognize that the statute’s time limitation refers only to “secure detention” pending placement. After the time in secure detention has expired, the juvenile must be transferred to home or nonsecure detention, not released outright.
Only by reading section 985.27 in its entirety and in the context of the chapter can the statute be given its logical meaning. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) (explaining that “all parts of a statute must be read together in order to achieve a consistent whole”).
[I]f a part of a statute appears to have a clear meaning if considered alone but when given that meaning is inconsistent with other parts of the same statute or others in pari materia, the Court will examine the entire act and those in pari materia in order to ascertain the overall legislative intent.
E.A.R., 4 So.3d at 629.
Chapter 985 treats the postcommitment detention of juveniles awaiting placement in a residential program differently than precommitment detention. A child committed to a moderate risk residential program but awaiting placement is not “free.” The child’s liberty is restrained in both an ordinary and legal sense. Moderate risk residential programs “provide 24-hour awake supervision, custody, and care, and treatment of residents. Youth assessed and classified for placement in programs at this commitment level represent a moderate risk to public safety and require close supervision.” § 985.03(45)(e), Fla. Stat. (2011) (emphasis added).
Chapter 985 acknowledges that “there is a need for secure placement for certain children alleged to have committed a delinquent act.” § 985.02(4)(a), Fla. Stat. (2011) (emphasis added). In a predisposition posture, the juvenile is presumed innocent, and the chapter limits the uses of precom-mitment “detention.” Postcommitment detention occurs after a juvenile has been adjudicated delinquent and after the court has committed the juvenile to a residential program. Such a juvenile is not merely alleged to have committed a delinquent act; there has been a finding of guilt. See generally §§ 985.24, et seq., Fla. Stat. (2011) (Part V of Chapter 985, discussing the permitted uses and criteria for detention which apply in a pre-commitment posture).
The legislature has structured the po-stcommitment detention statute in a manner that ensures that all committed juveniles awaiting placement in residential programs are physically detained or supervised in some fashion, not released without restrictions. The statute insures that those juveniles who are awaiting placement in low or moderate risk facilities do not languish in secure detention. The length of postcommitment secure detention is commensurate with the risk level of the juvenile and the commitment program.

Conclusion

Because the statute is unambiguous when read in full and in context, we need not look behind the language to determine legislative intent. The legislative history and structure of the statute, as it has *792 evolved over the years, supports our reading and leads to its logical conclusion.[2] For the reasons expressed herein, the petition is denied.

Petition denied.

MAY, C.J., GROSS and CIKLIN, JJ„ concur.

APPENDIX:

Postcommitment Detention of Juveniles Awaiting Placement

The post-commitment detention provisions were created in 1990. Ch. 90-208, § 5, Laws of Fla. The relevant section provided:
When a child is committed to the department awaiting dispositional placement, removal of the child from detention care shall occur within 5 days, excluding Saturdays, Sundays, and legal holidays. A child placed into secure detention care and committed to the department who is awaiting dispo-sitional placement in a commitment program shall be transferred by the department into nonsecure or home detention care if placement does not occur within 5 days after commitment, excluding Saturdays, Sundays, and legal holidays. If the child is committed to a residential program, the department may seek an order from the court authorizing continued detention for a specific period of time necessary for the appropriate residential placement of the child. However, such continued detention in secure detention care or transfer to nonsecure or home detention care shall not exceed 15 days after commitment, excluding Saturdays, Sundays, and legal holidays.
§ 39.044(11), Fla. Stat. (Supp. 1990) (emphasis added). From inception, the statute limited “secure detention” to five days with a possible ten-day extension to be followed by home or nonsecure detention. The initial version did not require the detention of committed juveniles awaiting placement and did not differentiate between juveniles committed to low, moderate, high, or maximum risk residential programs. Secure detention of a juvenile committed to a residential program was limited to five days — with a possible ten-day extension — at the conclusion of which the juvenile was to be transferred to home or nonsecure detention.
In R.L. v. State, 578 So.2d 862 (Fla. 5th DCA 1991), the court rejected the argument that this section authorized “unlimited home detention” pending placement, perhaps misreading the statute. It interpreted the statute to limit secure detention to five days after which the juvenile could be transferred to home detention, but the child could be held in home detention only up to fifteen days from the commitment order. Id. at 863.
When R.L. was decided, detention of committed juveniles awaiting placement was optional. The court could outright release the juvenile awaiting placement in a residential program. Any form of detention care ordered pending placement had to be authorized by the statutory criteria governing the use of predisposition detention. See R.W. v. Soud, 639 So.2d 25 (Fla.1994); D.F.M. v. State, 647 So.2d 1075 (Fla. 5th DCA 1994) (concluding that court erred in placing juvenile on home detention pending placement where no findings authorizing home detention were made).

1994 Amendments

In 1994, the legislature amended the postcommitment detention section. Ch. *793 94-209, § 31, Laws of Fla. The amended section began to differentiate between those juveniles awaiting placement in low or moderate risk programs and those committed to high or maximum risk programs. The legislature for the first time made postcommitment detention mandatory for high and maximum risk juveniles. The statute that became effective in 1995 read:
When a child is committed to the Department of Juvenile Justice awaiting dispositional placement, removal of the child from detention care shall occur within 5 days, excluding Saturdays, Sundays, and legal holidays. If the child is committed to a low-risk residential program or moderate risk residential program, the department may seek an order from the court authorizing continued detention for a specific period of time necessary for the appropriate residential placement of the child. However, such continued detention in secure detention care may not exceed 15 days after commitment, excluding Saturdays, Sundays, and legal holidays and except as otherwise provided in this subsection. Effective July 1, 1995, the court may order that a child be held in home detention of unlimited duration with electronic monitoring while awaiting placement in a low-risk residential program or a moderate risk residential program.
§ 39.044(10)(a), Fla. Stat. (1995) (emphasis supplied). In apparent response to R.L., the 1994 legislature added the emphasized language specifically authorizing the court to order home detention of unlimited duration with electronic monitoring for juveniles awaiting placement in low and moderate risk residential programs. The first sentence was now intended to limit only the secure detention of low and moderate risk juveniles.
The 1994 legislation created new subdivisions (10)(b) and (10)(c), which provided that those juveniles committed to high or maximum risk residential programs “must be held in detention care until placement or commitment is accomplished.” § 39.044(10)(b), Fla. Stat. (1995) (emphasis supplied); § 39.044(10)(c), Fla. Stat. (1995) (emphasis supplied). The new subdivisions made detention care mandatory for high and maximum risk juveniles regardless of whether they qualified for detention care in a preadjudication or predisposition posture.
Importantly, under this new scheme, the legislature provided for a possible 10-day extension of “detention care” for low or moderate risk juveniles. The legislature did not provide for an extension of the time high or maximum risk juveniles could be held in detention care. If the five-day limit in the first sentence applied to all forms of detention care, as petitioner argues, then high and maximum risk juveniles would have to be released from all forms of detention within five days with no allowance for an extension. The legislature could not have intended that high and maximum risk juveniles would be subject to less restrictive postcommitment detention than low or moderate risk juveniles.
As to high-risk placements, the legislature provided: “Youth assessed and classified for this level of placement require close supervision in a structured residential setting. Placement in programs at this level is prompted by a concern for public safety that outweighs placement in programs at lower commitment levels.” § 985.03(45)(d), Fla. Stat. (2011).
As to maximum risk placements, “Youth assessed and classified for this level of placement require close supervision in a maximum security residential setting. Placement at this level is prompted by a demonstrated need to protect the public.” *794 § 985.03(45)(e), Fla. Stat. (2011). Maximum risk programs “are long term residential and do not allow youth to have access to the community.” Id.
Juveniles committed to high and maximum risk residential placements pose the greatest threat to society, often to themselves, and require the greatest amount of supervision. They have been adjudicated delinquent for serious offenses and committed to secure residential facilities which are “hardware-secure with perimeter fencing and locking doors.” § 985.03(45)(d), Fla. Stat. (2011); § 985.03(45)(e), Fla. Stat. (2011) (“[Maximum-risk residential] [facilities are maximum-custody hardware-secure with perimeter security fencing and locking doors”).
This evolution shows that the five-day time limit of the first sentence applies to the secure detention of low and moderate risk juveniles. A contrary reading would lead to an absurd result. State v. Iacovone, 660 So.2d 1371, 1373 (Fla.1995) (quoting Williams v. State, 492 So.2d 1051, 1054 (Fla.1986), “Statutes, as a rule, ‘will not be interpreted so as to yield an absurd result’ ”).

1996 Amendments

In 1996, the legislature again amended the postcommitment detention subsection. Ch. 96-398, § 5, Laws of Fla. The 1996 amendment removed the sentence expressly allowing “home detention of unlimited duration with electronic monitoring” and added the following:
The court must place all children who are adjudicated and awaiting placement in a residential commitment program in detention care. Children who are in home detention care or nonsecure detention care may be placed on electronic monitoring.
§ 39.044(10)(a)2, Fla. Stat. (Supp.1996) (emphasis supplied). This new section, which remains substantially the same in the present statute, requires postcommitment detention care of all juveniles committed to residential programs, and does not require that the pre-disposition statutory criteria for home or nonsecure detention be met.
The 1996 amendment mandated some form of detention care for all juveniles pending placement, including those committed to low or moderate risk residential programs. No longer could the court outright release the committed juvenile. Although the 1996 amendment removed the language that expressly authorized unlimited home or nonsecure detention, the statute now required some form of detention care for all committed juveniles.[3] Home detention is the least restrictive form of detention care and is by definition, “nonrestrictive.”
In the same legislation, the legislature gave “teeth” to the expanded use of home and nonsecure postcommitment detention.
A child who is placed on home detention care, nonsecure detention care, or home or nonsecure detention care with electronic monitoring, while awaiting placement in a low-risk or moderate-risk program, may be held in secure detention care for 5 days, if the child violates the conditions of the home detention care, the nonsecure detention care, or the electronic monitoring agreement. For *795 any subsequent violations, the court may impose an additional 5 days in secure detention care.
§ 39.044(10)(a)2, Fla. Stat. (Supp. 1996). Again, the statute did not provide for sanctions for high and maximum risk juveniles. Were we to accept petitioner’s reading, the five-day limit in the first sentence would have required high and maximum risk juveniles to be released within five days from all forms of detention, with no possible extension, and with no possible sanctions for violations of home or nonsecure detention. The legislature could not have intended this absurd result.

The Present Statute

The present version of the statute is now found in section 985.27, Florida Statutes, and is titled “Postcommitment detention while awaiting placement.”[4]
In 1998, the legislature added language that required that any child held in secure detention awaiting placement must meet the statutory criteria for secure detention. Ch. 98-207, § 13, Laws of Fla. The April 1, 1998 Staff Analysis for CS/SB 2288 describes the then-existing state of the law and explains: “The youths awaiting placement in a low or moderate-risk residential program can also be held in home detention with electronic monitoring for an unlimited time period.” Id. at 5. The Analysis describes the purpose of the proposed change: “According to the DJJ, this change will prevent a misdemeanant who does not meet detention criteria from being held in secure detention while waiting to be placed in a low-risk or moderate-risk program. (This youth will still be required to be in non-secure or home detention care.)” Id. at 10.
In 2006, this section was renumbered and amended to its present form. Ch. 2006-120, § 37, Laws of Fla. A whereas clause in this chapter law states:
WHEREAS, the Legislature intends for the following legislation to strictly effect a technical reorganization of chapter 985, Florida Statutes, without any substantive change to its contents, for the purpose of simplifying the chapter’s presentation and providing greater clarity for its users.
Id. The amendment divided Chapter 985 into parts organized in chronological order — tracing the procedural progress of a juvenile delinquency case — and was intended to make Chapter 985 easier to follow. The 2006 amendment, which moved the provisions dealing with postcommitment detention of low and moderate risk juveniles pending placement to their own subdivisions, omitted the term “care” from the “detention care” previously in the first sentence. While the restructuring did not change the statute substantively, the manner in which the statute was restructured, and the omission of the legal term “detention care,” further evinces the intent of this subdivision. The first sentence limits “detention” in the ordinary sense, the physical holding of custody of the juvenile, in other words secure, not home detention which is non-restrictive.
Under the present statute, all juveniles who are adjudicated and awaiting placement in a residential commitment program must be placed in some form of detention care. § 985.27(1), Fla. Stat. (2011). The legislature intends that those who have been adjudicated delinquent and are pending placement in a moderate risk residential program be supervised in some fash *796 ion, not released without restrictions after five days.[5]

. The petition does not provide the offense dates. Chapter 2011-2, Laws of Florida, which adopts the 2011 Florida Statutes, states that it becomes “effective immediately upon publication.'' Having contacted the Division of Statutory Revision, which publishes the Florida Statutes, we were unable to ascertain the precise date of written publication. In the digital age, “publication” as used in this section may refer to electronic publication of the statutes on Florida’s "Online Sunshine” website. Two of the probation violation cases have 2010 case numbers. The bill adopting the 2011 Florida Statutes was approved by the Governor on March 25, 2011, and the Florida Senate’s website lists the effective date as July 6, 2011. Despite the "upon publication" language, courts have construed the reenactment act as effective on the date on which the act became law. Envntl. Confederation of Sw. Fla., Inc. v. State, 852 So.2d 349, 350 (Fla. 1st DCA 2003).
No changes were made to the relevant statutes during the 2010 or 2011 legislative sessions; the 2009, 2010, and 2011 versions are identical. For ease in reference, we will cite to the 2011 version of the Florida Statutes. Cf. E.A.R. v. State, 4 So.3d 614, 616 n. 1 (Fla.2009) (noting that this court had cited the latest version of the statute at issue, which was identical, but not the version in effect at the time of the offense).

. The attached appendix discusses the history of post-commitment detention.

. The May 20, 1996 Final Bill Analysis & Economic Impact Statement for SB 792, which incorporated CS/HB 1441, recognized that, under the law as it existed at the time, "after entry of an order of adjudication, children committed to low or moderate risk residential programs may not be held in secure detention for longer than 15 days while awaiting placement.” Id. at 8. Nothing in the analysis suggests that the 1996 amendment was intended to limit home or nonsecure detention.

. Chapter 97-238, Laws of Florida, created Chapter 985, Florida Statutes, and renumbered the section at issue without substantial modification.

. In 2005, the legislature created the "minimum-risk nonresidential” level of commitment — which is not addressed in the postcom-mitment detention section. Ch. 2005-263, § 4, Laws of Fla.