673 So.2d 152 (1996)
S.W., a child, Petitioner,
v.
James WOOLSEY, Superintendent of the Duval Regional Juvenile Detention Center, Respondent.
No. 96-1615.
District Court of Appeal of Florida, First District.
May 14, 1996.
*153 Louis O. Frost, Jr., Public Defender; Ward L. Metzger, Assistant Public Defender, Jacksonville, for Petitioner.
Robert A. Butterworth, Attorney General; Stephen R. White, Assistant Attorney General, Tallahassee, for Respondent.
WEBSTER, Judge.
Petitioner, a juvenile, sought review by habeas corpus of an order placing her in secure detention pending a disposition hearing, following a finding that she had committed what would be the third-degree felony of battery on a school board employee if committed by an adult. By an unpublished order, we previously granted the petition, and directed the trial court "to release petitioner from secure detention instanter." We now write to explain the basis for that order.
The relevant facts are not in dispute. Petitioner was charged by petition with what would be the third-degree felony of battery on a school board employee if committed by an adult. She entered a plea of not guilty to the charge. Although initially detained, at the time of her adjudicatory hearing, she was on release status. At the conclusion of the adjudicatory hearing, the trial court found that petitioner had committed the delinquent act charged.
Petitioner had no prior delinquency referrals. The Risk Assessment Instrument (RAI) prepared for petitioner upon her arrest reflected a total score of nine points, all of which were attributable to the battery on a school board employee charge. According to the RAI, secure detention is warranted only for a score of twelve or more points nine points warrants nonsecure or home detention. Immediately after it had announced its finding that the state had proven its case, the trial court announced, further, that it was ordering petitioner placed in secure detention pending a "review" by another judge on the following day. When petitioner's counsel objected, arguing that secure detention was unwarranted and impermissible, the trial court explained that it was basing its decision on the "change in circumstances" that petitioner "ha[d] now been found guilty." It explained, further, that, although the RAI reflected a score of only nine points, it was adding three points because of the finding of guilt, thereby bringing the total points to twelve, the minimum number which would warrant secure detention pursuant to the RAI.
At the detention review hearing on the following day, held before a different judge, petitioner's counsel argued that, according to section 39.044(9), Florida Statutes (1995), a child on release status might be placed in detention "only pursuant to a court hearing in which the original risk assessment instrument, rescored based on newly discovered evidence or changed circumstances with the results recommending detention[,] is introduced into evidence." In support of his argument, counsel cited R.W. v. Soud, 639 So.2d 25 (Fla.1994), and C.M.T. v. Soud, 662 So.2d 1382 (Fla. 1st DCA 1995). According to petitioner's counsel, the fact that petitioner had been found to have committed the delinquent act with which she had been charged was "not a change in circumstances" because the RAI had already reflected a score of nine points for that charge. The state responded that, because petitioner had now been found to have committed the act with which she had been charged, the trial court had the power to treat that as "an aggravating factor," adding three points to the score and, thereby, supporting continued secure detention. The trial court agreed *154 with the state, and continued petitioner in secure detention pending a disposition hearing.
The power to place those charged with, or found to have committed, a delinquent act in detention is entirely statutory in nature. Section 39.042(2)(a), Florida Statutes (1995), mandates that, except in cases involving a charge of domestic violence, "[a]ll determinations and court orders regarding placement of a child into detention care ... shall be based on a risk assessment of the child." Section 39.042(2)(b)1 directs that "[t]he risk assessment instrument [RAI] for detention care placement determinations and orders shall be developed by the Department of Juvenile Justice in agreement with representatives appointed by ... the Conference of Circuit Judges of Florida, the Prosecuting Attorneys Association, and the Public Defenders Association." That subsection also specifies considerations which must be included in the RAI (among which are "appropriate aggravating and mitigating circumstances"), and requires that the RAI "indicate whether detention care is warranted, and, if detention care is warranted, whether the child should be placed into secure, nonsecure, or home detention care."
An RAI form has been developed by the Department of Juvenile Justice in an effort to comply with section 39.042(2)(b)1. The document clearly contemplates that it will be completed by the child's case manager, and reviewed by a detention review specialist. Section II of the document is entitled "Admission Criteria." It lists those circumstances which, according to section 39.044(2), will permit continued detention by a court, following a hearing, of a child initially detained by the Department; and directs that, if any of those circumstances is found to exist, the individual completing the RAI proceed to section III, entitled "Risk Assessment." This section is much like a sentencing guidelines scoresheet, in that it assigns point values to a variety of circumstances. In addition, a subsection entitled "Aggravating or Mitigating Circumstances" permits the addition (for "aggravating factors") or subtraction (for "mitigating factors") of up to three points. (However, neither the term "aggravating factor" nor the term "mitigating factor" is defined.) Finally, the document indicates that release is appropriate when the score totals six or less points; that nonsecure or home detention is appropriate when the score totals seven to eleven points; and that secure detention is appropriate when the score totals twelve or more points. Pursuant to section 39.042(2)(b)2, Florida Statutes (1995), "[i]f, at the detention hearing, the court finds a material error in the scoring of the risk assessment instrument, the court may amend the score to reflect factual accuracy."
The parties and the trial court all recognized the applicability of section 39.044(9), Florida Statutes (1995), which reads:
If a child is on release status and not detained pursuant to this section [i.e., section 39.044], the child may be placed into secure, nonsecure, or home detention care only pursuant to a court hearing in which the original risk assessment instrument, rescored based on newly discovered evidence or changed circumstances with the results recommending detention, is introduced into evidence.
In C.M.T. v. Soud, 662 So.2d 1382 (Fla. 1st DCA 1995), we held that a child on release status may not be placed in secure detention absent the preparation of a new RAI, rescored according to section 39.044(9), relying on R.W. v. Soud, 639 So.2d 25 (Fla.1994).
It does not appear that, here, a new RAI was ever prepared by petitioner's case manager. Certainly, none had been prepared at the time the trial court announced its decision to place petitioner in secure detention. Accordingly, it would appear that C.M.T. mandates that a writ of habeas corpus issue. However, the state argues that the requirements of section 39.044(9) were met when the trial court announced that it was adding three points to the original RAI because petitioner had been found to have committed the charged delinquent act, which the trial court considered a "change in circumstances" and an "aggravating factor." We disagree.
In the first place, there is no indication that a rescored RAI was ever "introduced *155 into evidence," as required by section 39.044(9). Moreover, it is clear that the relevant statutesand the RAI formcontemplate that the original and rescored RAI's will be prepared by the child's case manager, not by the court. According to section 39.042(2)(b)2, "the court may amend the score to reflect factual accuracy" only if, at the hearing, it "finds a material error in the scoring." There is nothing to suggest that occurred here.
Finally, and perhaps most important, the fact that petitioner had been found to have committed the delinquent act with which she had been charged was simply not a "changed circumstance," as that term is used in section 39.044(9). Clearly, the term "changed circumstances" is intended to refer to circumstances not taken into account in the preparation of the original RAI. It is true that petitioner had not yet been found to have committed the delinquent act with which she had been charged at the time her original RAI was prepared. However, it is also true that the RAI form contemplates that, when completing it, it be presumed that the act charged was committed, and points assigned accordingly. In fact, that is precisely what occurred hereall of the nine points reflected on petitioner's original RAI were attributable to the delinquent act with which she was charged. To permit additional points to be assigned for that act after a finding that it had, in fact, been committed would be to permit a double scoring for the same circumstance. We do not believe that such a result would be consistent with the intent behind the concept of risk assessments.
Based upon the foregoing, we conclude that, pursuant to section 39.044(9), Florida Statutes (1995), it was not permissible to place petitioner in secure detention pending her disposition hearing. Accordingly, the petition for writ of habeas corpus is granted.
ZEHMER, C.J., and VAN NORTWICK, J., concur.