WEBSTER, Judge.
By a petition for a writ of certiorari, the Department of Juvenile Justice seeks review of an “administrative order” entered by the respondent circuit judge. The “administrative order” purports to direct that the Department “consider for appropriate aggravation” a list of “factors and circumstances” when performing its statutory duty in juvenile delinquency cases to prepare risk assessment instruments for those accused of having committed a delinquent act. We conclude that we possess jurisdiction to consider the petition, and that the “administrative order” was entered in excess of the respondent’s jurisdiction. Accordingly, we grant the petition, and quash the “administrative order.”
On June 11, 1996, on his “own motion,” the respondent issued an “administrative order” titled “In re: Aggravating Factors for Consideration and Use by the Department of Juvenile Justice when Preparing Risk Assessment Instruments.” That “administrative order,” which is apparently intended to have general application in the Juvenile Division of the Fourth Judicial Circuit, states that, “when preparing a risk assessment instrument on each child alleged to have committed a crime [sic],” the Department “shall consider for appropriate aggravation on the risk assessment instrument” a list of 21 “factors and circumstances.” The Department challenges this “administrative order” as beyond the jurisdiction of the respondent because the respondent is not the chief judge of the Fourth Judicial Circuit, and because the “administrative order” would have the effect of overriding the statutory scheme for development and revision of risk assessment instruments. On behalf of the respondent, the Attorney General’s Office takes the position that the “administrative order” is a valid exercise of the respondent’s jurisdiction, and that it purports to do nothing more than to “interpret the [relevant] statute,” because of a dispute between the Department and “the juvenile court” over its intended meaning.
Certiorari is the proper remedy when a lower court acts “without or in excess of’ its jurisdiction. Hazouri v. Maillet, 276 So.2d 70, 71 (Fla. 1st DCA 1973). See also Valdez v. Chief Judge, Eleventh Judicial Circuit, 640 So.2d 1164 (Fla. 3d DCA 1994) (certiorari appropriate remedy when petition alleges administrative order promulgated by chief judge exceeded his jurisdiction), review denied, 652 So.2d 816 (Fla.1995); State ex rel. Wainwright v. Booth, 291 So.2d 74, 76 (Fla. 2d DCA) (“Prohibition is to prevent a tribunal from taking action in excess of its power while certiorari is to remedy the consequent evils of such action”), cert. discharged, 300 So.2d 257 (Fla.1974). Because the petition alleges that the respondent exceeded his jurisdiction when he issued the “administrative order,” we conclude that cer-tiorari is the appropriate remedy, and that we have jurisdiction. Art. V, § 4(b)(3), Fla. Const.; Fla.R.App.P. 9.030(b)(2) & (3).
*1378 Florida Rule of Judicial Administration 2.050(b)(2) provides that “[t]he chief judge [of a circuit] may enter and sign administrative orders.” It is undisputed that the respondent is not the chief judge of the Fourth Judicial Circuit. Read in context, it seems to us that the intent behind this provision is that only the chief judge “may enter and sign administrative orders.” Accordingly, we hold that the respondent lacked the authority to enter the “administrative order” in question.
We hold, further, that the subject matter of the “administrative order” in question is beyond that which is the proper concern of administrative orders, as contemplated by the Rules of Judicial Administration. Therefore, the order could hot stand, even if it had been entered by the chief judge of the circuit.
Florida Rule of Judicial Administration 2.020(c) defines an “administrative order” as “a directive necessary to administer properly the court’s affairs.” It seems to us relatively clear that the “administrative order” in question has nothing to do with the proper administration of the affairs of the Fourth Judicial Circuit, or of its Juvenile Division. Instead, it appears that the “administrative order” is intended to usurp the role given by the legislature to the Department regarding development and revision of risk assessment instruments.
Section 39.042(2)(a), Florida- Statutes (1995), requires that, subject to one exception not relevant for purposes of this discussion, “[a]ll determinations and court orders regarding placement of a child into detention care ... shall be based on a risk assessment of the child.” Section 39.042(2)(b)l reads:
The risk assessment instrument for detention care placement determinations and orders shall be developed by the Department of Juvenile Justice in agreement with representatives appointed by the following associations: the Conference of Circuit Judges of Florida, the Prosecuting Attorneys Association, and the Public Defenders Association. Each association shall appoint two individuals, one representing an urban area and one representing a rural area. The parties involved shall evaluate and revise the risk assessment instrument as is considered necessary using the method for revision as agreed by the parties. The risk assessment instrument shall take into consideration, but need not be limited to, prior history of failure to appear, prior offenses, offenses committed pending adjudication, any unlawful possession of a firearm, theft of a motor vehicle or possession of a stolen motor vehicle, and community control status at the time the child -is taken into custody. The risk assessment instrument shall also take into consideration appropriate aggravating and mitigating circumstances, and shall be designed to target a narrower population of children than s. 39.044(2). The risk assessment instrument shall also include any information concerning the child’s history of abuse and neglect. The risk assessment shall indicate whether detention care is warranted, and, if detention care is warranted, whether the child should be placed into secure, nonsecure, or home detention care.
As we explained in R.W. v. Woolsey, 673 So.2d 152, 154 (Fla. 1st DCA 1996), a risk assessment instrument form has been developed by the Department, in an effort to comply with this statutory mandate. In S.W., we described the risk assessment instrument thus:
Section II of the document is entitled “Admission Criteria.” It lists those circumstances which, according to section 39.044(2), will permit continued detention by a court, following a hearing, of a child initially detained by the Department; and directs that, if any of those circumstances is found to exist, the individual completing the RAI [i.e., the case manager assigned by the Department to the child] proceed to section III, entitled “Risk Assessment.” This section is much like a sentencing guidelines scoresheet, in that it assigns point values to a variety of eir- *1379 cumstances. In addition, a subsection entitled “Aggravating or Mitigating Circumstances” permits the addition (for “aggravating factors”) or subtraction (for “mitigating factors”) of up to three points. (However, neither the term “aggravating factor” nor the term “mitigating factor” is defined.) Finally, the document indicates that release is appropriate when the score totals six or less points; that nonsecure or home detention is appropriate when the score totals seven to eleven points; and that secure detention is appropriate when the score totals twelve or more points.
Id. at 154.
It is relatively clear that the “administrative order” was motivated by the respondent’s understandable frustration resulting from the Department’s failure to identify on the risk assessment instrument form what “factors” might properly be scored as either “aggravating or mitigating circumstances.” However, it is at least equally clear that the legislature intended, when it adopted section 39.042(2)(b)l, that the Department, in cooperation with representatives from the other entities identified, would be responsible for developing, and revising, a standard risk assessment instrument form for use throughout the state. One legitimate justification for such an intent would be to prevent each judicial circuit throughout the state from adopting its own form and, thereby, to foster statewide uniformity in decisions involving the detention of juveniles. A similar intent was behind the adoption of the sentencing guidelines. E.g., Doby v. State, 461 So.2d 1360 (Fla. 2d DCA 1984). Clearly, action such as that of the respondent would thwart that intent.
A situation not unlike that with which we are faced was presented in State ex rel. Department of Health and Rehabilitative Services v. Upchurch, 394 So.2d 577 (Fla. 5th DCA 1981). There, the Department of Health and Rehabilitative Services (which, at the time, performed the role in juvenile delinquency matters since transferred to the Department of Juvenile Justice) sought to prohibit enforcement of an “administrative order” entered by the chief judge of the Seventh Judicial Circuit. The order in question purported to enlarge beyond those specified by the legislature the number of situations in which an intake officer was to place a child alleged to have committed a delinquent act into secure detention. Vacating the order, the court said:
Rule 2.020(c), Florida Rules of Judicial Administration, defines an administrative order as “a directive necessary to administer properly the court’s affairs, but not inconsistent with the constitution ...” We do not construe the order in question as one necessary to administer the court’s affairs. Instead, it is an attempt to legislate in the area of juvenile law, a function expressly delegated to the Legislature by the constitution. It is clear from the closing language of the section of the statute under consideration that the Legislature intended that the criteria for placement in a secure detention facility set forth in that section “shall govern the decision” in determining whether a secure detention facility is warranted unless otherwise ordered by the court on a case by case basis. To give any other meaning to the statute would be to permit the court to amend the obvious statutory intent, which is not constitutionally permissible.
We understand the purpose and intent of the administrative order and perhaps would amend the statute in like manner were we permitted by law to do so. However, as was aptly said in the case of Schwarz v. Nourse, 390 So.2d 389 (Fla. 4th DCA 1980), where an order of similar import was vacated:
Our theory of government is that of separation of powers. The Legislature and not the court is responsible for legislating. It may well be time to drastically change the law on juveniles.... Judges of Courts cannot do so because we were not elected to the Florida Legislature.
390 So.2d at 392.
*1380 The respondent acted in excess of his jurisdiction, so we have no choice but to vacate the order below.
Id. at 579-80. See also Administrator, Retreat Hospital v. Johnson, 660 So.2d 333 (Fla. 4th DCA 1995) (order adding conditions to statutory requirements for Baker Act hospitalization could not be justified as proper administrative order).
We conclude that the respondent exceeded his jurisdiction when he entered the “administrative order” in question. Accordingly, we grant the petition for a writ of certiorari, and quash the “administrative order.”
MICKLE and LAWRENCE, JJ., concur.