PER CURIAM.
C.A.C. and C.R.C. are juveniles who have filed habeas corpus petitions challenging their placement in secure detention prior to an adjudicatory hearing. After determining that each juvenile was entitled to relief, we granted the respective petitions by unpublished order. We now issue this opinion to explain our reasons for doing so.
We consolidate these two cases because they present the same issue; namely, whether ten points may be scored for a burglary of an .unoccupied dwelling on the Risk Assessment Instrument (RAI) , which form is used to assess and determine a juvenile’s placement in secure detention. As explained below, we conclude it is inappropriate to score ten points on the RAI for “burglary of an occupied residential structure” when it is uncontrovert-ed that the dwelling was unoccupied when the burglary occurred.
C.A.C. and C.R.C. were each charged with burglary of a dwelling. In their respective criminal report affidavits, the arresting officer wrote that they had burglarized a vacant home that was for sale. Each criminal report affidavit charged the juveniles with a violation of section 810.02, Florida Statutes (1997), burglary of a dwelling. After being taken into custody, the Department of Juvenile Justice prepared a RAI for both juveniles.
The RAI operates much like a sentencing guidelines scoresheet in an adult case, although the purpose of the RAI is to determine whether “pretrial” detention would be appropriate for a given juvenile. See S.W. v. Woolsey, 673 So.2d 152 (Fla. 1st DCA 1996)(providing a discussion of the RAI, its background and its uses). To this end, subsection III. A. of the RAI categorizes all of the possible offenses a juvenile can be charged with committing and assigns each category a number of points. Other subsections of section III assign points for such things as a juvenile’s other pending charges and prior history. *772 If the overall number of points in section III totals twelve or more, the juvenile may be placed in secure detention prior to an adjudicatory hearing.
There is no category in subsection III. A. of the RAI that specifically names the offense of burglary of a dwelling. Subsection III. A. 3. encompasses, among other things, “burglary of an occupied residential structure.” The Department of Juvenile Justice determined that burglary of a dwelling falls into this category, a category which scores ten points. Both C.A.C. and C.R.C. argue the offense with which they were charged should have been placed into subsection III. A. 5., which encompasses “[a]ll other second degree felonies (except dealing in stolen property).” Subsection III. A. 5. scores eight points. In both cases, had the burglary charge been scored with eight points, neither juvenile would have been eligible for placement in secure detention.
Section 810.02 does not define any crime described as “burglary of an occupied residential structure.”[1] This section does define burglary of a dwelling, whether occupied or not. Both of these offenses are second-degree felonies under subsections 810.02(3)(a) and (b).
The dispute in this case centers around whether a dwelling must be occupied when burglarized in order to qualify as “burglary of an occupied residential structure.” C.A.C. and C.R.C. argue the term “burglary of an occupied residential structure” should be read to mean only a violation of section 810.02(3)(a), burglary of an occupied dwelling. The State replied that because burglary of a dwelling is a second-degree felony regardless of whether the dwelling was occupied or not, the term “burglary of an occupied residential structure” should be read to mean a violation of either section 810.02(3)(a) or 810.02(3)(b). In essence, the State argues the entire phrase “occupied residential structure” means a “dwelling” whether occupied or not, whereas C.A.C. and C.R.C. argue that “residential structure” means dwelling and that “occupied” modifies the term “residential structure.”
We conclude the reading C.A.C. and C.R.C. advance comports with the plain language of the RAI form. The word “occupied” unambiguously modifies the words “residential structure.” To follow the State’s reading of the RAI form, we would have to ignore the word “occupied.” It is a rule of construction that, words in a statute should not be construed as surplusage if a reasonable construction is possible which will give them some force and meaning. See Pinellas County v. Woolley, 189 So.2d 217 (Fla. 2d DCA 1966).
Furthermore, we believe assigning ten points to burglary of an occupied dwelling and only eight points to burglary of an unoccupied dwelling is consistent with the legislative intent of chapter 985, Florida Statutes. Section 985.02(4)(a), Florida Statutes (1997), states that detention should be used only when less restrictive interim placement alternatives prior to adjudication are inappropriate. By making a distinction between burglaries of occupied dwellings and unoccupied dwellings, the RAI form is limiting the use of secure detention. This distinction is justified because burglary of an occupied dwelling is a more serious crime than burglary of an unoccupied dwelling, even though both crimes are second-degree felonies.
Once we concluded that the crimes charged in these two cases did not qualify as burglaries of an occupied residential structure, neither C.A.C.’s nor C.R.C.’s recalculated RAI score justified secure detention prior to an adjudicatory hearing. We therefore granted the petitions and ordered that C.A.C. and C.R.C. be released without delay.
*773 Petitions for writ of habeas corpus granted.
BLUE, A.C.J., and GREEN and CASANUEVA, JJ., Concur.

. We are compelled to note that had the drafters of the RAI tracked the language of the relevant statutory sections rather than use novel terminology, there would be no controversy in this case.