765 So.2d 260 (2000)
J.J., a child, Petitioner,
v.
Ron FRYER, Superintendent, Broward Regional Juvenile Detention Center, Respondent.
No. 4D00-2711.
District Court of Appeal of Florida, Fourth District.
August 15, 2000.
*261 Alan H. Schreiber, Public Defender, and Sarah W. Sandler, Assistant Public Defender, Fort Lauderdale, for petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for respondent.
FARMER, J.
A 13-year old juvenile seeks a writ of habeas corpus to overturn a trial judge's order that he be held in secure detention. The facts underlying his detention began with Hollywood Police espying a 1999 Ford Explorer at a high rate of speed near the central business area of Young Circle. An officer in the vicinity investigating an unrelated accident saw the vehicle with 3 youths in it, petitioner in the front passenger seat. The officer gave chase, siren wailing and blue lights flashing. He pursued the vehicle through residential areas at speeds of up to 65 mph. When he *262 finally caught up with the vehicle in Dania, the 3 youths fled. Petitioner was apprehended soon after. He admitted that he knew the vehicle was stolen but said that the juvenile driving had actually stolen it. Petitioner was charged with grand theft.
The Department of Juvenile Justice (DJJ) prepared a risk assessment instrument (RAI). See § 985.213, Fla. Stat. (1999). It reflected 7 points for the third degree felony of grand theft auto, with an additional point for two prior misdemeanors. He was thereupon released for home detention.
On the day after his arrest, the court conducted a hearing. There was no issue as to probable cause. Initially, the trial court indicated that home detention would be continued. A representative from DJJ noted that petitioner was a codefendant with a case heard just prior to the present case and stated that:
"It's my understanding there are several outstanding issues with some juveniles in that jurisdiction with regard to these auto thefts. Judge, I'm going to ask the Court to consider placing [J.J.] on electronic monitoring if that's possible...."
We have no way of knowing what "several outstanding issues ... with regard to auto thefts" might mean or whether it was intended to convey the thought that petitioner was likely to commit new crimes if not placed in monitoring. We do note that at this point DJJ was not asking for secure detention in spite of the results of its own risk assessment. At that, the court indicated that it would order monitoring.
Defense counsel objected and asked to continue the home detention without any monitor. That prompted petitioner's mother to advise the court that she thought that he and the other two involved juveniles should be detained for the maximum of 21 days. The court noted that his score was 8, and that "aggravation" would be limited to an additional 3 points, still not enough to order secure detention. The court further explained that with monitoring, an electronic signal would be transmitted through the home telephone if petitioner left without authorization. The mother responded that the monitoring devices were not effective, that her other sons were able to avoid these devices and implied that the devices on her phone were an inconvenience to her while of doubtful utility.
DJJ once again weighed in, this time to urge that the trial judge is not limited to a 3-point aggravation, and that the 3-point limit was directed only to DJJ in making the initial risk assessment. DJJ further argued that if there is clear and convincing evidence that petitioner is a danger to himself or to the community, or if he would not appear in court, the court could go outside the 3 point aggravation.
Defense counsel interjected that petitioner's mother did not understand the limitations on detention before final hearing. She pointed out that petitioner has a "very small history," only two misdemeanors and no violent offenses. She argued that there was no legally valid reason to impose secure detention. The assistant state attorney responded that petitioner should be placed in secure detention for the maximum of 21 days because the operation of the vehicle during the flight put "life in jeopardy." Defense counsel noted that petitioner was not the driver, merely a passenger. The assistant state attorney retorted that all the suspects fled when the vehicle was finally stopped, thereby taking him out of the category of a mere passenger, presumably showing instead a purpose to flee from apprehension.
The court now addressed petitioner's mother again, inquiring as to his regular behavior: whether he listened to his mother, talked back to her, refused to do what he was asked to do, was disrespectful, or stayed out late at night. To all of these, mother answered "No." She added that she did not know "how he got out with this crowd." She explained that her two other sons had gotten into trouble and no one helped her. She stated that "by letting *263 [J.J.] get away with this, he might do something worse." The court replied that he could be held in secure detention for 21 days at most. Mother responded:
"That's OK with me, long as he knows whatthat he can't go out and keep doing these things. Keep letting those kids go is the reason why they keep doing these things right now."
In context, this last sentence is an abstract statement on punishment generally, rather than personal evidence that her son is likely to commit new offences if not securely detained before his final hearing.
The trial court decided to impose secure detention for 21 days, explaining its ruling as follows:
"having now gleaned from the mother's testimony that she believes that this young man is a threat to himself as well as society, that he's been hanging around the wrong group of kids, and that there are circumstances in which she fears that he may engage in this kind of conduct in the future, I'm going to aggravate his score points, hence he's going to be securely detained for 21 days."
It is from this order that petitioner has brought this petition for habeas corpus.
The petition argues that secure detention was not authorized by the RAI prepared by DJJ in this case. The offense allowed for only 7 points, and his history added only 1 additional point. With a total of 8 points, only nonsecure or home detention were authorized. Moreover the RAI itself provides for an "aggravating" factors, but only up to an additional 3 points, and thus there is no legal basis for the trial judge to supply sufficient points simply to be able to order secure detention. Consequently, the petition argues, he is entitled to the writ and should be released to home detention.
We begin by observing that pretrial detention of juveniles is now governed entirely by statute. S.W. v. Woolsey, 673 So.2d 152, 154 (Fla. 1st DCA 1996) ("The power to place those charged with ... a delinquent act in detention is entirely statutory in nature."). Section 985.213(2)(a) requires, with certain exceptions not here applicable, that:
"all determinations and court orders regarding placement of a child into detention care shall comply with all requirements and criteria provided in this part and shall be based on a risk assessment of the child...."
We must therefore examine the statutes to see if this secure detention order for 21 days "compl[ies] with all requirements and criteria" set forth in the statutes and is based on a risk assessment of the child.
We begin with section 985.213(1),[1] which commands that:
"All determinations and court orders regarding the use of secure, nonsecure, or home detention shall be based primarily upon findings that the child:
(a) Presents a substantial risk of not appearing at a subsequent hearing;
(b) Presents a substantial risk of inflicting bodily harm on others as evidenced by recent behavior;
(c) Presents a history of committing a property offense prior to adjudication, disposition, or placement;
(d) Has committed contempt of court by 1. Intentionally disrupting the administration of the court; 2. Intentionally disobeying a court order; or 3. Engaging in a punishable act or speech in the court's presence which shows disrespect for the authority and dignity of the court; or
(e) Requests protection from imminent bodily harm." *264 The most careful study of what occurred at the detention hearing, as well as the RAI prepared by DJJ, discloses that none of these criteria apply in this case. There is no evidence that petitioner presents any risk of inflicting bodily harm on others or of not appearing at further hearings; that he has a history of committing property offenses prior to disposition of charges; or that he has committed any contempt of court.
Therefore we turn to section 985.215(2), which provides that a child placed into any kind of detention may be continued in detention by the court if:
"(a) The child is alleged to be an escapee or an absconder from a commitment program, a community control program, furlough, or aftercare supervision, or is alleged to have escaped while being lawfully transported to or from such program or supervision.
"(b) The child is wanted in another jurisdiction for an offense which, if committed by an adult, would be a felony.
"(c) The child is charged with a delinquent act or violation of law and requests in writing through legal counsel to be detained for protection from an imminent physical threat to his or her personal safety.
"(d) The child is charged with committing an offense of domestic violence as defined in s. 741.28(1) and is detained as provided in s. 985.213(2)(b)3.
"(e) The child is charged with possession or discharging a firearm on school property in violation of s. 790.115.
"(f) The child is charged with a capital felony, a life felony, a felony of the first degree, a felony of the second degree that does not involve a violation of chapter 893, or a felony of the third degree that is also a crime of violence, including any such offense involving the use or possession of a firearm.
"(g) The child is charged with any second degree or third degree felony involving a violation of chapter 893 or any third degree felony that is not also a crime of violence, and the child 1. Has a record of failure to appear at court hearings after being properly notified in accordance with the Rules of Juvenile Procedure; 2. Has a record of law violations prior to court hearings; 3. Has already been detained or has been released and is awaiting final disposition of the case; 4. Has a record of violent conduct resulting in physical injury to others; or 5. Is found to have been in possession of a firearm.
"(h) The child is alleged to have violated the conditions of the child's community control or aftercare supervision."
After these enumerated factors, section 985.215(2) then states in pertinent part:
"Unless a child is detained under paragraph (d) or paragraph (e), the court shall utilize the results of the risk assessment performed by the juvenile probation officer and, based on the criteria in this subsection, shall determine the need for continued detention. A child placed into secure, nonsecure, or home detention care may continue to be so detained by the court pursuant to this subsection. If the court orders a placement more restrictive than indicated by the results of the risk assessment instrument, the court shall state, in writing, clear and convincing reasons for such placement."

We shall call this last sentence the "departure provision."
The state argues that, while the departure provision allows the judge to exceed the RAI upon clear and convincing reasons, "[t]here is no indication that those reasons have to be those listed in the statute." In any event, argues the state, the RAI in this case "indicates that he meets the criteria listed in [subdivisions (g)2 and (g)3]." The state's argument stops there, however, and fails to elaborate as to why it thinks the evidence shows reasons consistent with subdivisions (g)2 and (g)3. Petitioner responds that past law violations are already factored into the *265 RAI prepared by DJJ. It is also plain that petitioner has not actually been found after an adjudicatory hearing to have committed a delinquent act, so there is no occasion yet to consider whether there is evidence that he may likely not appear at the hearing for the final disposition in the case.
We have carefully examined the RAI in this case, and it does expressly add 1 point for petitioner's two past misdemeanor violations. Apart from having previously committed two misdemeanors, there is no evidence that petitioner is likely to commit additional violations. His mother's statement that "by letting [J.J.] get away with this, he might do something worse" is plainly not evidence that he is likely to do so unless he is detained securely before the adjudicatory hearing. The DJJ representative's statement regarding outstanding issues regarding these auto thefts is facially not evidence of anything. Mother's incomprehension as to how petitioner "got out with this crowd" is understandable, but hardly an affirmation that he is a member of a gang, or persistently associates with other youngsters or even adults who are "bad influences." Petitioner thus argues that the evidence does not support or constitute "clear and convincing reasons" for departing from the RAI.
We dispense with DJJ's argument at the hearing that the trial judge has authority to "aggravate" the recommendation, by which we understand DJJ to argue for judicial amendment of the RAI result to enhance the restrictiveness of the RAI recommendation. As we read the statutes, any questions of aggravating or mitigating factors are for the officials preparing the RAI, not for the judge as such. Instead, the judge is later given the power to order a more restrictive placement than recommended by the RAI, but if the judge does so it must be based on clear and convincing reasons gleaned from the record and evidence and consistent with the statutes.
As we have just repeated, the authority to depart from an RAI and order more severe detention must be based on "clear and convincing reasons" which the judge must state in writing. See § 985.215(2) ("If the court orders a placement more restrictive than indicated by the [RAI], the court shall state, in writing, clear and convincing reasons for such placement."). In this instance the trial judge did not state in writing his reasons for exceeding the RAI. Instead, we merely have the transcript of the detention hearing furnished by petitioner in his appendix accompanying the petition for writ of habeas corpus.
In S.W. v. Woolsey, the court stated that section 985.215(2) "is much like a sentencing guidelines scoresheet, in that it assigns point values to a variety of circumstances." 673 So.2d at 154. That may be true, but we note that section 985.215 lacks a counterpart to section 921.0016(1)(c)'s specific authority to file a transcript of orally stated reasons within 7 days of sentencing for a formal written statement of reasons for departing from the RAI.
We think the requirement for a written statement when departing from the RAI was not merely precatory. The legislature has carefully crafted an entire statutory scheme to control juvenile detention. It replaces a former scheme largely reposing discretion in juvenile court judges on the delinquency issues of disposition and detention. The current statutory framework supplants discretion with specific rules governing the judge and the disposition. From them, we discern a purpose to make the matter of juvenile detention in delinquency cases less subject to individualized variations by judges. Thus, the judge is commanded to "comply with all requirements and criteria provided in this part" and that the detention of children charged with committing delinquent acts "shall be based on a risk assessment of the child." Moreover, the judge is directed to use the RAI results, with continued detention based "on the criteria in this *266 subsection ..." § 985.215(2) ("the court shall utilize the results of the risk assessment performed by the juvenile probation officer and, based on the criteria in this subsection, shall determine the need for continued detention.").
The requirement to state departure reasons in writing is obviously purposeful. As the supreme court said in State v. Jackson, 478 So.2d 1054 (Fla.1985), receded from on other grounds, Wilkerson v. State, 513 So.2d 664 (Fla.1987), where the court considered an argument that noncompliance with the same kind of requirement under the sentencing guidelines could be tolerated:
"the development of the law would best be served by requiring the precise and considered reasons which would be more likely to occur in a written statement than those tossed out orally in a dialogue at a hectic sentencing hearing. The efforts of the State of Florida to provide badly needed reforms in the sentencing aspect of the criminal justice system are in the embryonic stages. A mammoth effort has been expended by the Legislature and by the Sentencing Guidelines Commissions, past and present, to develop some uniformity and to respond to some of the major problems which surround the entire sentencing process. For the first time in this state, a body of law is being developed regarding considerations which may or may not be appropriate in sentencing criminal defendants. This effort would best be served by requiring the thoughtful effort which "a written statement providing clear and convincing reasons" would produce. This, in turn, should provide a more precise, thoughtful, and meaningful review which ultimately will result in the development of better law."
478 So.2d at 1056 (quoting from Boynton v. State, 473 So.2d 703, 706-707 (Fla. 4th DCA 1985)). By forcing a juvenile judge to take the time to set down in a written order the reasons the judge concluded were "clear and convincing" the legislature has decided that departures from its requirements in juvenile delinquency detention cases will be both more reasoned and therefore consistent with the statute and, at the same time, less frequent. Were we to casually dispense with the writing requirement and hold that a transcript of the detention hearing would serve the same purpose, we should thereby eliminate a provision that the drafters have carefully calibrated to achieve more uniform and predictable results.
We also note that the departure provision requires "clear and convincing reasons," not clear and convincing evidence. We do not understand this text to be accidental. In In re Adoption of Baby E.A.W., 658 So.2d 961 (Fla.1995), cert. denied, 516 U.S. 1051, 116 S.Ct. 719, 133 L.Ed.2d 672 (1996), the supreme court held that the clear and convincing evidence standard does not allow an appellate court to conduct de novo review to reweigh testimony and evidence. 658 So.2d at 967. We interpret the provision for clear and convincing reasons, rather than evidence, to refer to the legality and sufficiency of the reasons given by the trial judge for imposing more severe detention than provided by the RAI.
We thus conclude that, because we are not asked to consider whether the evidence is clear and convincing but instead whether the judge's reasons are clear and convincing, our review in this instance is de novo. In short we are required to assess for ourselves whether the reasons supported by the evidence are weighty and important enough to validate a variation from the risk assessment required by the statute. This cannot be a deferential kind of review. Otherwise, the judge's decision would be subsumed by the traditional abuse of discretion test formerly applied. To do so would eviscerate the legislature's amendment of the former scheme.
Accordingly, we grant the petition for writ of habeas corpus, and order petitioner's *267 immediate release from secure detention and his restoration to home detention as provided in the RAI and initially imposed.
WARNER, C.J., and DELL, J., concur.
NOTES
[1] See § 985.215(2), Fla. Stat. (1999). Unless otherwise indicated, all statutory references are to Florida Statutes (1999).