SORONDO, J.
(dissenting).
I begin by observing that I do not perceive this petition for writ of prohibition or certiorari as an abuse of process, as suggested by the majority opinion. “Common law certiorari is the proper vehicle to review whether the lower court acted in excess of its jurisdiction.” Hudson v. Hofmann, 471 So.2d 117, 118 (Fla. 2d DCA 1985); see also Morse v. Moxley, 691 So.2d 504 (Fla. 5th DCA 1997); Dep’t of Juvenile Justice v. Soud, 685 So.2d 1376 (Fla. 1st DCA 1997). Moreover, I do not perceive anything in this record that establishes, or even suggests, any nefarious motives on the part of the Department of Children and Families (the Department). The majority suggests that the child in this case was removed from his temporary custodian, Ms. Scott, “under suspect circumstances.” Maj. Op. at 491. I disagree. The child was removed from Ms. Scott’s physical custody after an adoptive home study performed by the State of Virginia, under the Interstate Compact On The Placement of Children, refused to approve his placement with Ms. Scott. In light of this study, the Department summoned Ms. Scott to its offices and, apparently fearing that she might flee with the child when she got the bad news, removed J.C. from her physical custody at that time. These circumstances are not suspect, indeed, all things considered, they appear reasonable.[7]
The majority opinion accurately recites some of the facts of the case but does not completely relate its entire procedural history. On July 6, 2000, J.C. was adjudicated dependent and placed in the legal custody of the Department. This adjudication granted the Department “the right to de *493 termine where and with whom the child shall live.” § 39.521(4), Fla. Stat. (2000). It was pursuant to this grant of authority that the Department allowed J.C. to remain in the physical custody of Ms. Scott.
On August 18, 2000, the lower court entered a Final Judgment terminating the parental rights of J.C.’s mother. That order reads, in pertinent part as follows:

FINAL JUDGMENT FOR TERMINATION OF PARENTAL RIGHTS AND DISPOSITION AS TO THE MOTHER ...

It is in the manifest best interest of the Child that this Court terminate the Mother’s parental rights to the Child and permanently commit the Child to the custody of the Department for subsequent adoption, and pursuant to Sections 89.802 and 39.810, Fla. Stat. (1998), permanently deprive the Mother of any rights that she may have to the Child....
‡ ‡ Í *
The Court FURTHER FINDS that the Florida Department of Children and Families is authorized under the laws of the State of Florida to accept the Child for the purpose of subsequent adoption, to place the Child in an adoptive home and to consent to the adoption of the Child, and that the Florida Department of Children and Families is willing to receive the Child.
It is THEREUPON ORDERED that:
The Child, [J.C.] is hereby adjudged to be dependent as to the Mother, [G.H.]; AND the parental rights of the Mother to the Child are terminated; AND the Mother is permanently deprived of any right that she may have to the Child; AND the Child is permanently committed to the custody of the Florida Department of Children and Families for subsequent Adoption.
(Emphasis added). Under this order, the Department was awarded permanent custody of J.C. until such time as the child was adopted. The Department thereafter chose to award physical custody to Ms. Scott, pending permanent adoption.
In C.S. v. S.H., 671 So.2d 260, 266-67 (Fla. 4th DCA 1996), the court reversed a final judgment of adoption in favor of a child’s foster parents that was contrary to the Department’s selection of the child’s biological relatives as prospective parents. Writing for the court, then Judge, now Justice Pariente, said:
The jurisdiction granted to the trial court to review HRS’s actions concerning permanent adoptive placement is derived from statutory authority. See In Interest of L.W., 615 So.2d 834 (Fla. 4th DCA 1993). While the courts have supervisory authority under Chapter 39, the authority is circumscribed. In In Interest of K.A.B., 483 So.2d 898 (Fla. 5th DCA 1986), the Fifth District held that the trial court could not order HRS, as legal custodian of the child, to place the child in the facility chosen by the trial court because the trial court did not have supervisory authority over the agency’s choice of where to place the child:
Thus, it is crystal clear that it is within the discretion of the agency to decide where to keep a child who is in its custody. The agency is, of course, better equipped to make day-to-day health and welfare decisions which concern the child.
(citations omitted). Historically, this has always been the case. See Dep’t of Health and Rehab. Servs. v. State, 616 So.2d 91 (Fla. 5th DCA 1993)(appellate court agreed with HRS’s argument that a juvenile judge lacks authority under Chapter 39 to direct HRS to place any child committed to it, in a specific facility, or to *494 require HRS to spend its funds in any particular manner); In the Interest of K.A.B., 483 So.2d 898 (Fla. 5th DCA 1986)(it is crystal clear that it is within the discretion of [HRS] to decide where to keep a child in its custody); State ex rel. Dep’t of Health and Rehab. Servs. v. Nourse, 437 So.2d 221 (Fla. 4th DCA 1983)(“The court had no jurisdiction to direct a specific placement and treatment of an individual committed to the Department of Health and Rehabilitative Services.”).
The lower court and the majority base their conclusions on section 39.812(4), Florida Statutes (2000), which reads as follows:
The court shall retain jurisdiction over any child placed in the custody of the department until the child is adopted. After custody of a child for subsequent adoption has been given to the department, the court has jurisdiction for the purpose of reviewing the status of the child and the progress being made toward permanent adoptive placement. As part of this continuing jurisdiction, for good cause shown bg the guardian ad litem for the child, the court may review the appropriateness of the adoptive placement of the child.
(Emphasis added). Understanding this subsection requires a careful reading of each sentence. The first sentence grants the trial court general jurisdiction over the child until adoption. The second sentence narrows that jurisdiction once custody has been given to the Department, and restricts it to review of the child’s status, and review of “the progress being made towards permanent adoptive placement.” As I read this sentence, where, as in this case, custody of the child has been given to the Department, the court’s responsibilities are limited to ensuring that the child’s general welfare (“status”) is satisfactory, and further ensuring that bureaucratic inertia does not deter the promptest possible adoptive placement of the child.
Fla. Stat. § 39.47(4)(1993)
The Court shall retain jurisdiction over any child for whom custody is given to a licensed child-placing agency or to the department until the child is placed for adoption. After custody of a child for subsequent adoption has been give to an agency or to the department the court has jurisdiction for the purpose of reviewing the status of the child and the progress being made toward permanent adoptive placement, pursuant to the provisions of Part V of this chapter [children in foster care], but this jurisdiction does *495 not include the exercise of any power or influence by the court over the selection of an adoptive parent. (Emphasis added).
*494 The last sentence allows the court to review the “appropriateness” of the ultimate adoptive placement of the child. The court, however, is limited in this regard and cannot conduct such a review sua sponte. Instead, it can only do this upon a “good cause” showing by the child’s guardian ad litem. The question then remaining is how the court is to determine the “appropriateness of the adoptive placement of the child.”
In analyzing this issue, the Guardian Ad Litem observes that the Fourth District Court of Appeal’s decision in C.S., upon which I rely, interpreted the 1993 version of the statute, which was amended in 1994. The present version of the statute is, in pertinent part, identical to the 1994 version. A comparison of the 1993 and 1994 statutes follows:
Fla. Stat. § 39.453(l)(c)(1994)
The Court shall retain jurisdiction over any child for whom custody is given to a licensed child-placing agency or to the department until the child is adopted. After custody of a child for subsequent adoption has been given to an agency or to the department, the court has jurisdiction for the purpose of reviewing the status of the child and the progress being made toward permanent adoptive placement. As part of this continuing jurisdiction, for good cause shown by the guardian ad litem for the child, the *495 court may review the appropriateness of the adoptive placement of the child. (Emphasis added).
The Guardian argues that the amended language requires a different conclusion than that reached in C.S. Contrary to the Guardian’s position, in Florida Dep’t of Children and Families v. Adoption of B.G.J., 819 So.2d 984 (Fla. 4th DCA 2002), the Fourth District Court of Appeal reiterated its belief that the language of the statute presently in question, section 39.812(4), does not give the trial court the power to nullify the Department’s selection of adoptive parents. In reversing the trial court’s order placing a child for adoption with the foster parents when that decision was contrary to DCF’s appropriate selection of two other people as adoptive parents, the court specifically said:
As found in C.S., a trial court cannot interfere with DCF’s decision to select an adoptive family “where HRS’s selection was appropriate, consonant with its policies and made in an expeditious manner.”
(Citation omitted).
Contrary to the holding of B.G.J., the Guardian insists that the specific changes made by the legislature in 1994 evince an intent to expand the scope of the trial court’s review. I concede that this is a reasonable interpretation of the amendment but find that it is not necessarily in conflict with B.G.J. The difference revolves around the meaning ascribed to the word “appropriateness,” as used in the statute. The Guardian appears to read this word to mean that the trial court is free to substitute its own judgment of who the best adoptive parent(s) will be for that of the Department’s, thus acting as the ultimate authority on the “appropriateness” of the adoption. I disagree with this expansive view and find the Fourth District Court of Appeal’s analysis to be far more persuasive. Accordingly, I believe that the trial court’s review of the appropriateness of the child’s adoptive placement is limited to a determination of whether the selection has been made in a manner consistent with the Department’s own internal policies, and not in an arbitrary or capricious manner.
Nevertheless, the issue before this Court does not involve the final adoptive placement of the child. Rather, the issue is whether this statute authorizes the judiciary to order the Department to place a child in a specific, temporary, pre-adoptive placement, after permanent custody of that child has been awarded to the Department pending a final adoptive placement for the child. In my judgment, it does not. As the Fifth District Court of Appeal said in K.A.B, “[i]t is up to the courts ... to adjudicate legal rights and responsibilities, it is not within their province to manage the affairs of another branch of government.” Id. at 899.
I respectfully dissent.

. The majority further suggests at footnote four of its opinion that the best interest of the child requires recognition of "the importance of bonding and attachments in early childhood relationships.” Although there is truth to this, the Florida Supreme Court has cautioned that we must be careful not to adopt a rule that "physical custody, because of substantial bonding, is determinative in contested adoptions.” Matter of Adoption of Doe, 543 So.2d 741, 744 (Fla.1989). The court noted that the danger in assessing a child’s “best interests” by the degree of bonding would make a tentative placement "effectively unre-viewable.” Id.